# EXHIBIT 2

**TO**
**NOTICE OF REMOVAL**

[Complaint, Robeson County File No. 21-CVS-3150]

STATE OF NORTH CAROLINA                     FILED  IN THE GENERAL COURT OF JUSTICE
                                                          SUPERIOR COURT DIVISION
COUNTY OF ROBESON                    2021 DEC -9 P 2: 04     21 CVS _____
                                                              21CVS 03150
ADAM JONES d/b/a TRIPLE J FARMS   )
and LAWVER INSURANCE &            )
FINANCIAL SERVICES d/b/a          )
INSURANCE OF THE CAROLINAS,       )
                                  )
                   Plaintiffs,    )          **COMPLAINT**
                                  )
      v.                          )
                                  )
CRUM & FORSTER SPECIALTY          )
INSURANCE COMPANY,                )
                                  )
                   Defendant.     )

Adam Jones d/b/a Triple J Farms ["Mr. Jones" or "Triple J"] and Lawver Insurance & Financial Services d/b/a Insurance of the Carolinas ["IOC"] assert the following claims against Crum & Forster Specialty Insurance Company ["Crum & Forster"].

## I.  Background

### A.  The Parties.

1.  Triple J is a sole proprietorship owned and operated by Mr. Jones, a resident of Robeson County, North Carolina.

2.  IOC is a North Carolina corporation with its principal place of business in Randolph, North Carolina. IOC is engaged in business as an independent insurance agency.

3.  Defendant Crum & Forster is a corporation incorporated in some state other than North Carolina which conducts insurance business in North Carolina. Upon information and belief, its principal place of business is in Morristown, New Jersey.

B.  **Jurisdiction and Venue.**

4. This Court has jurisdiction over this action and Defendant pursuant to N.C. Gen. Stat. §§ 1-75.4, 7A-240, 7A-243, and other applicable law.

5. Venue is proper under N.C. Gen. Stat. §§ 1-76 and 1-82 because the property to which this action relates is located in Robeson County, and a substantial part of the events giving rise to the action occurred in Robeson County.

C.  **The Property at Issue.**

6. Mr. Jones, doing business as Triple J Farms, operates, among other things, a farming business in Robeson County and Scotland County.

7. At all relevant times, Mr. Jones owned and operated a New Holland Combine and Header [the "New Holland Equipment"] for the harvesting of crops grown by Triple J. This was the only combine and header that Mr. Jones owned or leased at any relevant time.

8. At no relevant time did Mr. Jones own, lease or otherwise have an insurable interest in an AgCo Combine or Header. The only combine equipment he owned and operated at relevant times was the New Holland Equipment.

9. Mr. Jones used the brokerage services of IOC to purchase a Commercial Inland Marine insurance policy issued by Crum & Forster (Policy No. BAK-56503-01). The Crum & Forster policy was in force for the policy year running from November 13, 2019 to November 13, 2020. The Crum & Forster policy was subsequently renewed by IOC for the 2020-2021 policy year.

10. When Mr. Jones acquired the New Holland Equipment, he requested to IOC that the New Holland Equipment be listed as equipment covered under the Crum & Forster policy for

the 2019-2020 policy year. Crum & Forster agreed to insure the equipment, and the New Holland Equipment was added to the Schedule of Covered Equipment for that policy year.

11. When the Crum & Forster policy was being renewed by IOC for the 2020-2021 policy year, Crum & Forster requested submission of a new Schedule of Equipment. In preparing the Schedule, an IOC employee inadvertently listed the combine and header as AgCo equipment, rather than using the correct brand name of New Holland that was listed on the policy for the 2019-2020 policy year.

12. The Crum & Forster renewal policy issued to Mr. Jones for the 2020-2021 policy year purported to cover one combine and header, and Mr. Jones in fact only owned one combine and header.

13. Mr. Jones intended to insure the New Holland combine and header that he owned. He did not intend to buy insurance for a combine and header that he did not own, and in which he had no insurable interest. At the same time, Crum & Forster intended to insure only the combine equipment owned by Mr. Jones and in which he had an insurable interest, and Crum & Forster did not intend to charge a premium for covering equipment in which Mr. Jones had no insurable interest. In the alternative, if Crum & Forster did intend to cover equipment in which Mr. Jones had no insurable interest, and to charge a premium for purporting to cover such insurance, then the insurance for which Crum & Forster charged a premium was illusory and, in that event, Crum & Forster's conduct would have been an unfair trade practice under North Carolina law. *Davidson v. Knauff Ins. Agency, Inc.*, 93 N.C. App. 20, 376 S.E.2d 488 (1989).

14. Crum & Forster charged a premium for insuring Mr. Jones' combine and header, which Mr. Jones paid.

- 3 -

Case 7:22-cv-00025-FL   Document 1-3   Filed 02/10/22   Page 4 of 11

the 2019-2020 policy year. Crum & Forster agreed to insure the equipment, and the New Holland Equipment was added to the Schedule of Covered Equipment for that policy year.

11. When the Crum & Forster policy was being renewed by IOC for the 2020-2021 policy year, Crum & Forster requested submission of a new Schedule of Equipment. In preparing the Schedule, an IOC employee inadvertently listed the combine and header as AgCo equipment, rather than using the correct brand name of New Holland that was listed on the policy for the 2019-2020 policy year.

12. The Crum & Forster renewal policy issued to Mr. Jones for the 2020-2021 policy year purported to cover one combine and header, and Mr. Jones in fact only owned one combine and header.

13. Mr. Jones intended to insure the New Holland combine and header that he owned. He did not intend to buy insurance for a combine and header that he did not own, and in which he had no insurable interest. At the same time, Crum & Forster intended to insure only the combine equipment owned by Mr. Jones and in which he had an insurable interest, and Crum & Forster did not intend to charge a premium for covering equipment in which Mr. Jones had no insurable interest. In the alternative, if Crum & Forster did intend to cover equipment in which Mr. Jones had no insurable interest, and to charge a premium for purporting to cover such insurance, then the insurance for which Crum & Forster charged a premium was illusory and, in that event, Crum & Forster's conduct would have been an unfair trade practice under North Carolina law. *Davidson v. Knauff Ins. Agency, Inc.*, 93 N.C. App. 20, 376 S.E.2d 488 (1989).

14. Crum & Forster charged a premium for insuring Mr. Jones' combine and header, which Mr. Jones paid.

15. On March 20, 2021, the New Holland Equipment actually owned by Mr. Jones was destroyed in a fire. The fire was a covered risk under the Crum & Forster policy.

16. Mr. Jones properly submitted a claim for the loss of the New Holland Equipment under the Crum & Forster policy, but Crum & Forster denied coverage of the loss solely on the grounds that the combine and header were listed on the policy as an AgCo combine and header rather than as a New Holland combine and header.

17. Mr. Jones and IOC brought to Crum & Forster's attention that the combine and header actually owned by Mr. Jones (and insured under the 2019-2020 policy) was New Holland Equipment; that Mr. Jones did not and had never owned or had an insurable interest in an AgCo combine and header; and that the Schedule of Equipment had inadvertently listed the wrong make and serial number for the only combine and header that Mr. Jones had owned at any relevant time, due to IOC's clerical error.

18. Mr. Jones and IOC also brought to Crum & Forster's attention North Carolina cases holding that a policyholder is entitled to have the insurance policy reformed to reflect the parties' true intent where, as here, the property or insured, has been misidentified on the policy through a clerical error. *See, e.g., Metropolitan Prop. & Cas. Ins. v. Dillard*, 126 N.C. App. 795, 799, 487 S.E.2d 157, 159 (1997) (holding that an insured who had mistakenly entered the wrong address for his house on the insurance application so that the homeowners policy purported to cover a house with a different address than the applicant's house, was entitled to reformation of the policy so that it covered the house that the policyholder actually owned); *Shelby Ins. Co. v. Goodwin*, 2006 N.C. App. LEXIS 886 (N.C. App. 2006) (holding that the insurance policy should be reformed to cover the construction business actually owned by Rodolfo Sierra even though the

policy was issued in the name of a non-existent entity due to a mistake by Mr. Sierra in filling out the application).

19. As both IOC and Mr. Jones pointed out to Crum & Forster, the principle applied in *Metropolitan* and *Shelby Insurance* applies to the claim by Mr. Jones. Crum & Forster and Mr. Jones both intended for the Crum & Forster policy to insure the New Holland combine and header owned by Mr. Jones, and only one such combine and header existed. The combine and header were scheduled on the policy, albeit with the wrong make and serial number, and Crum & Forster collected a premium for insuring a combine and header. Accordingly, the Crum & Forster policy, like the insurance policies at issue in *Metropolitan* and *Shelby Insurance* should be reformed to correct the misnomer and to reflect coverage for the combine and header actually owned by Mr. Jones, as intended.

20. If the policy issued by Crum & Forster to Mr. Jones is not reformed to conform the parties' intent to insure the combine and header actually owned by Mr. Jones, then the coverage provided to Mr. Jones for the combine and header was illusory. Mr. Jones did not own or otherwise have an insurable interest in an AgCo combine and header, so that Crum & Forster would never have paid a loss for the coverage of a combine and header which it purported to issue. Thus, absent reformation, Crum & Forster charged, and Mr. Jones paid, premiums for coverage that it did not receive. Simply, Crum & Forster collected premiums on coverage that it did not provide.

21. Mr. Jones therefore is entitled to reformation of the policy and to payment of the claim for the loss of his combine and header due to fire.

22. Even after Crum & Forster was informed of the facts and its attention was directed to controlling North Carolina law, however, Crum & Forster continued its refusal to reform the policy, and to pay Mr. Jones' claim for loss of the combine and header.

23. The failure by Crum & Forster to pay Mr. Jones' claim under the policy in a timely fashion resulted in consequential damages to Mr. Jones that were reasonably foreseeable. Specifically, failure by Crum & Forster to reform the policy and pay the claim, by being informed of the facts and the law, meant that Mr. Jones could not acquire a replacement combine and header in time to harvest crops as they matured, and Mr. Jones therefore had to incur extra expense in hiring others to harvest his crops.

24. Not only has Crum & Forster refused to reform the policy and pay the claim, even though it collected premium to pay the claim, but it has not offered to refund the premium that it charged and collected for insuring Mr. Jones' combine and header, even though Crum & Forster now claims there was no coverage.

25. Crum & Forster's continued refusal to reform the policy and pay the claim so that Mr. Jones could acquire a replacement combine and header threatened Mr. Jones with additional consequential damages as more crops were maturing and needed harvesting. In order to mitigate those damages pending correction of Crum & Forster's recalcitrance, Mr. Jones and IOC entered into an agreement under which IOC advanced $134,258.06 to Mr. Jones for use in paying off the existing loan on the combine and header, so that Mr. Jones would then qualify for financing for a replacement combine and header. The agreement between Mr. Jones and IOC provides for IOC to be reimbursed out of the amounts collected by Mr. Jones from Crum & Forster under the claims asserted herein.

26. The amount advanced by IOC to Mr. Jones did not cover the full amount of Mr. Jones' claim under the policy, nor did it cover his claim against Crum & Forster for the consequential damages suffered prior to the advance of funds. In addition, while IOC's advance of funds needed to acquire a replacement combine and header averted the consequential damages

of paying for additional third-party harvesting of Triple J crops, Mr. Jones still suffered additional consequential damages because he incurred interest expense on the acquisition of the new combine and header that would not have been incurred if Crum & Forster had timely reformed the policy and paid the claim. Accordingly, both Mr. Jones and IOC have an interest in the recovery sought by this lawsuit and they both therefore have joined as parties to this lawsuit.

## II. Claims for Relief

### A. First Claim for Relief – Claim for Reformation of the Policy.

27. The allegations of the preceding paragraphs 1 through 26 of this Complaint are incorporated herein by reference.

28. The Crum & Forster policy for the 2020-2021 policy year – during which the fire loss to the combine and header occurred – listed the combine and header owned by Mr. Jones as AgCo Equipment instead of listing it as New Holland Equipment, because of a mutual mistake. Within the meaning of the *Metropolitan Prop. & Cas. Ins.* and *Shelby Insurance* cases cited above, both Crum & Forster and Mr. Jones intended for the policy to cover a combine and header actually owned by Mr. Jones, and neither of them intended for the policy to cover equipment that was not owned by Mr. Jones and in which he had no insurable interest. The only way to conform to the intent of both parties is to reform the policy to correct the inadvertent misnomer and provide the correct make and serial number of the combine and header actually owned by Mr. Jones.

29. Mr. Jones (and IOC to the extent that it has advanced funds to Mr. Jones to help mitigate his damages) are entitled to judgment reforming the Crum & Forster policy, consistent with the parties' intent so that it covers the combine and header actually owned by Mr. Jones.

### B. Second Claim for Relief – Claim for Damages.

30. The allegations in the preceding paragraphs 1 through 29 of this Complaint are incorporated herein by reference.

31. The Crum & Forster policy in question is an enforceable agreement.

32. Mr. Jones has satisfied all obligations under the policy.

33. Crum & Forster has breached the contract with Mr. Jones by failing to reform the policy and pay the Jones claim.

34. The amount of damages which Mr. Jones is entitled to recover for the breach by Crum & Forster is the amount that is due under the Crum & Forster policy, as reformed, plus the consequential damages suffered by Mr. Jones due to the stubborn failure by Crum & Forster to acknowledge its obligation to reform the policy and pay the claim.

35. IOC joins in this claim to the extent that it is a real party of interest for the recovery of that portion of the Jones claim that would reimburse IOC for advancing funds in order to avoid continuing consequential damages to Mr. Jones.

**C.   Unfair Trade Practice.**

36. The allegations of the preceding paragraphs 1 through 35 of this Complaint are incorporated herein by reference.

37. Crum & Forster's continued refusal to acknowledge that the policy should be reformed and the claim paid, along with its insistence that it is entitled to retain premiums paid for coverage that would be illusory if Crum & Forster's position were to prevail, constitutes unfair and deceptive trade practices under N.C. Gen. Stat. §§ 58-63-1 and N.C. Gen. Stat. § 75-1.1 & 75-16:

   a.   Crum & Forster (i) failed to conduct a reasonable investigation on all available information; (ii) failed to attempt in good faith to effectuate a prompt, fair and equitable

settlement of the claims by Mr. Jones for which liability has become reasonably clear; and (iii) compelled Mr. Jones to institute litigation to recover amounts due under his insurance policy by offering substantially less than the amounts due to Mr. Jones.

        b.     Crum & Forster collected premiums for illusory insurance (i.e., the premiums that it collected for insurance for the AgCo Equipment which Mr. Jones did not own), and by continuing to hold those premiums even after it learned of the facts and the error. Crum & Forster therefore has continued to hold premiums for which it incurred no risk if Crum & Forster's position were to be accepted. Crum & Forster cannot have it both ways. It cannot equitably charge and keep a premium for insuring Mr. Jones' combine and header while at the same time contending that it has no obligation to pay for the loss of the only combine and header owned by Mr. Jones.

        38.     The unfair trade practice by Crum & Forster has damaged Mr. Jones in the amount of the insurance claim that it has failed to pay, based on its refusal to honor its obligation to reform the policy, and the amount of consequential damages suffered by Mr. Jones as a result of Crum & Forster's refusal to honor the Jones claim. IOC is entitled to participate in the Jones' recovery for Crum & Forster's unfair trade practice to the extent necessary to reimburse it for funds advanced to Mr. Jones to mitigate his damages.

WHEREFORE, Plaintiffs respectfully request the following relief:

        1.     An Order reforming Mr. Jones' policy to reflect the correct brand name and particulars of the combine and header equipment actually owned by Mr. Jones.

        2.     Judgment against Crum & Forster for all amounts due under the policy as reformed and for all consequential damages suffered by Mr. Jones as a result of the delay in paying his claim.

        3.     Treble damages pursuant to N.C. Gen. Stat. § 25-1.1 & 75-16.

        4.     Such other and further relief in favor of Plaintiffs as may be appropriate.

This the 8th day of December, 2021.

*[signature]*

Michael T. Medford, N.C. State Bar # 7227
MANNING, FULTON & SKINNER, P.A.
  Attorneys for Lawver Insurance and Financial
  Services d/b/a Insurance of the Carolinas
3605 Glenwood Avenue - Suite 500
Post Office Box 20389
Raleigh, North Carolina 27619
Telephone:    (919) 787-8880
Facsimile:    (919) 325-4618
E-mail:       medford@manningfulton.com

*[signature]* Spencer T. Wiles by MTM

R. Steven DeGeorge, N.C. State Bar # 20723
Spencer T. Wiles, N.C. State # 53664
ROBINSON BRADSHAW & HINSON, P.A.
Attorneys for Adam Jones d/b/a Triple J Farms
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone:    (704) 377-8374
E-mail:       swiles@robinsonbradshaw.com
              sdegeorge@robinsonbradshaw.com