UNITED STATES DISTRICT COURT
for the EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Civil Action No. 7:22-cv-00025-FL

ADAM JONES d/b/a TRIPLE J FARMS            )
and LAWVER INSURANCE &                     )
FINANCIAL SERVICES d/b/a                   )
INSURANCE OF THE CAROLINAS,                )
                                           )
                    Plaintiffs,            )
                                           )
        v.                                 )
                                           )
CRUM & FORSTER SPECIALTY                   )
INSURANCE COMPANY,                         )
                                           )
                    Defendant.             )

## DESIGNATION AND DISCLOSURE OF EXPERT WITNESS BY PLAINTIFFS ADAM JONES d/b/a TRIPLE J FARMS and LAWVER INSURANCE & FINANCIAL SERVICES d/b/a INSURANCE OF THE CAROLINAS

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs Adam Jones d/b/a Triple J Farms and Lawver Insurance & Financial Services d/b/a Insurance of the Carolinas ("Plaintiffs"), by and through undersigned counsel, designate and disclose the following expert witness who is expected to provide opinion testimony at the trial of this matter:

R. Bryan Tilden
526 Red Gate Road
Pittsboro, North Carolina 27312-7934

Mr. Tilden's expert report, curriculum vitae, and other information required to be produced pursuant to Rule 26(a)(2) is attached hereto as Exhibit 1.

Discovery in this matter is ongoing, and thus Plaintiffs and Mr. Tilden expressly reserve their rights to amend and supplement the opinions expressed in the expert report attached hereto as Exhibit 1. In addition, Plaintiffs reserve the right to amend or supplement their expert

designation as necessary and to designate supplemental experts based upon future discovery of any nature, future testimony of witnesses, or opinions or testimony of any expert designated by Defendant Crum & Forster Specialty Insurance Company.

This the 12th day of August, 2022.

_____/s/ Michael T. Medford_____.
Michael T. Medford, N.C. State Bar # 7227
Brianne M. Glass, N.C. State Bar #56491
MANNING, FULTON & SKINNER, P.A.
  *Attorneys for Lawver Insurance and Financial*
  *Services d/b/a Insurance of the Carolinas*
3605 Glenwood Avenue - Suite 500
Post Office Box 20389
Raleigh, North Carolina  27619
Telephone:     (919) 787-8880
Facsimile:     (919) 325-4600
E-mail:        medford@manningfulton.com
               glass@manningfulton.com


_____/s/ Spencer T. Wiles_____
R. Steven DeGeorge, N.C. State Bar # 20723
Spencer T. Wiles, N.C. State Bar # 53664
ROBINSON BRADSHAW & HINSON, P.A.
  *Attorneys for Plaintiff Adam Jones d/b/a Triple J*
  *Farms*
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone:     (704) 377-8374
Facsimile:     (704) 373-3974
E-mail:        sdegeorge@rbh.com
               swiles@robinsonbradshaw.com

- 2 -

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing *Designation and Disclosure of Expert Witness by Plaintiffs Adam Jones d/b/a Triple J Farms and Lawver Insurance & Financial Services d/b/a Insurance of the Carolinas* was duly served this date on the following by forwarding a copy thereof via E-Mail and U.S. Mail, addressed as follows:

Adam L. Ross
Alexandra B. Bachman
JAMES, McELROY & DIEHL, P.A.
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Email: aross@jmdlaw.com
       abachman@jmdlaw.com

Kristin V. Gallagher (*pro hac vice*)
Martin Harms (*pro hac vice*)
Kennedys CMK LLP
120 Mountain View Boulevard
Basking Ridge, NJ 07920
Email: kristin.gallagher@kennedyslaw.com
      martin.harms@kennedyslaw.com

     *Attorneys for Defendant*
     *Crum & Forster Specialty Insurance Company*

This 12th day of August, 2022.

          /s/ Michael T. Medford    .
       Michael T. Medford, N.C. State Bar # 7227
       Brianne M. Glass, N.C. State Bar #56491
       MANNING, FULTON & SKINNER, P.A.
       *Attorneys for Lawver Insurance and Financial*
       *Services d/b/a Insurance of the Carolinas*
       3605 Glenwood Avenue - Suite 500
       Post Office Box 20389
       Raleigh, North Carolina 27619
       Telephone:  (919) 787-8880
       Facsimile:  (919) 325-4600
       E-mail:    medford@manningfulton.com
                glass@manningfulton.com

- 3 -

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ADAM JONES d/b/a TRIPLE J FARMS and LAWVER INSURANCE & FINANCIAL SERVICES d/b/a INSURANCE OF THE CAROLINAS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | 7:22-cv-00025-FL |
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | |

Expert Report of
R. Bryan Tilden, CPCU, CLU, ARM, ALCM, ChFC, CIC, SCLA
TILDEN AND ASSOCIATES
Pittsboro, North Carolina
August 12, 2022

1

August 26, 2020, RT Specialty provided another copy of the policy to answer the question of what was on the policy, up to and including endorsement #6.[34]

RT Specialty provided a renewal quotation on October 5, 2020.[35] Ms. Ashley provided forms to Mr. Jones to process the renewal on the 2013 New Holland Combine CR7090.[36] RT Specialty provided a reminder on November 16, 2020, that the policy had expired and requested renewal instructions.[37] On November 18, 2020, Ms. Ashley requested the policy renewal.[38] A statement of no loss was executed by Mr. Jones on November 19, 2020.[39] Signed forms were sent to RT Specialty on November 23, 2020.[40] Crum issued renewal policy BAK-56503-2 effective November 13, 2020, with Adam Jones DBA: Triple J Farms as the named insured.[41]

In response to RT Specialty's November 23, 2020, email, Ms. Ashley erroneously completed the application showing Mr. Jones' combine and header as an AgCO Combine and Header with total limits of $210,000.[42] Crum issued renewal policy BAK-56503-2 effective November 13, 2020, with the named insured Adam Jones DBA: Triple J Farms.[43] Mr. Jones' equipment was erroneously described as AgCO and insured for $180,000 and the header for $30,000, instead of the New Holland equipment.[44] The combine and header were the only equipment covered by the policy at that time.[45]

---

[34] CF – 00058 – CF – 00092.
[35] IOC-0218 – IOC-0221; IOC-0282 – IOC-0282.06.
[36] IOC-0188 – IOC-0190.
[37] IOC-0205.
[38] IOC-0210; CF – 00096.
[39] CF – 00098.
[40] IOC-0216; CF – 00093 – CF – 00095.
[41] IOC-0085 – IOC-0107; CF – 00001 – CF – 00023; Declaration of Adam Jones, ¶ 10.
[42] IOC-0052 – IOC-0054; Declaration of Libby Ashley, ¶ 9; Declaration of Adam Jones, ¶ 13.
[43] IOC0010; IOC-0218; Declaration of Adam Jones, ¶ 11.
[44] IOC-0094.
[45] CF – 00010.

8

## The Losses

The first notice of loss was provided on March 22, 2021.[46] RT Specialty acknowledged the loss on March 23, 2021.[47] On April 9, 2021, Mr. Jones was advised by Crum that the AgCO Gleaner equipment was the only listed item on the policy.[48] On May 7, 2021, Ms. Hancock advised RT Specialty of the error. On May 11, 2021, Crum advised that coverage was not available for the claim as the involved equipment was not on the schedule.[49]

## Opinions

In reviewing the documents, four facts become patently obvious:

1. The cost of risk, or the rate charged, remained constant over the two policies at $1.40 per hundred of value, regardless of the equipment listed;[50]

2. Crum had agreed to insure the New Holland Combine CR7090 in the first policy as reflected in endorsement #3,[51] and there is nothing in the available facts to indicate that Crum would not have insured it in the renewal policy if correctly named;

3. There is nothing in the available facts to show that Crum was prejudiced by the fact the description was incorrect and in fact, received a surcharged premium on the New Holland Equipment; and

---

[46] CF – 00106 – CF – 00108; Declaration of Libby Ashley, ¶ 15.

[47] IOC-0055.

[48] IOC-0151 – IOC-0152; IOC-0150.

[49] IOC-0001 – IOC-0003; CF – 00121 – CF – 00123; Declaration of Adam Jones, ¶ 12.

[50] IOC-0218.

[51] CF – 00085.

9

4. The only underwriting restriction was that the scheduled limit could be no more than $500,000.[52] At the time of loss, the scheduled limit was $210,000.[53]

*"Because of the personal relationship formed in an insurance transaction, the insurance company should not place its interests above the insured's." "The claim professional handling claims should honor the company's obligations under the implied covenant of good faith and fair dealings."*[54]

An insurance policy is a personal contract because it protects not property, liability, lives, or health, but people. Moreover, the identity of the people it insures is highly relevant to the insurance company. Insurance companies are interested in preserving their rights to select insureds with whom they are willing to enter into contractual agreements and to reject others.

This concept has important ramifications. For one thing, an insurance company underwriter may carefully evaluate the personal characteristics of the person(s) applying for insurance. The insurance company has an obvious interest in avoiding moral and morale hazards[55] by declining to issue insurance policies to people who present unacceptable hazards. The important underwriting goal can be achieved only when the underwriter knows the identity of the insured.

---

[52] IOC-0008.

[53] IOC-0094.

[54] James J. Markham, *The Claims Environment* (Malvern: The Insurance Institute, 1993) p. 13.

[55] A *moral hazard* is a condition that exists when a person may try to intentionally cause a loss or may exaggerate a loss that has occurred. A *morale hazard* is a condition that exists when a person is less careful than he or she should be, knowing that insurance will respond in the event of loss.

10

*"Insureds purchase insurance to pay for losses, for peace of mind, and to benefit society by reducing social burdens. When insurers do not provide those benefits of insurance, they cause just the opposite: unpaid losses, great stress, and burdens on society."*[58] *"Claim service includes prompt and courteous conduct, good communication, and prompt payment."*[59]

The AgCO equipment erroneously[60] was described in the renewal policy instead of the New Holland equipment with a limit of $210,000 resulting in a premium before taxes and fees of $2,940.[61] Mr. Jones had no financial interest in the $210,000 of AgCO equipment described in the policy.[62] Mr. Jones would not meet the Commercial Inland Marine Condition stating that "[w]e will not pay you more than your financial interest in the Covered Property," as he had no financial interest in the AgCO equipment.[63] In reviewing the Crum document production, I find no instance where the premium on the AgCO equipment was returned to Mr. Jones.[64]

The Crum policies provided coverage on an actual cash value basis.[65] The policies also contain an endorsement that defines actual cash value.[66] Actual cash value takes into account the effects of both economic inflation (which tends to increase some property values over time) and depreciation (which tends to reduce most property values over time). Mr. Jones purchased the 2013 combine with 1227 engine hours/984 threshing hours and 2008 head for $173,750 on June

---

[58] Doris Hoopes, *The Claims Environment, 2nd ed.* (Malvern: The Insurance Institute, 2000) p. 9.2.
[59] Doris Hoopes, *The Claims Environment, 2nd ed.* (Malvern: The Insurance Institute, 2000) p. 12.1.
[60] Affidavit of Libby Ashley, ¶ 9.
[61] IOC-0086. ($210,000/100) x $1.40 = $2,940. Taxes and fees resulted in a policy premium of $3,348.76.
[62] Affidavit of Adam Jones, ¶ 9.
[63] CF – 0034; CF –11.
[64] Affidavit of Adam Jones, ¶ 18, ¶ 22.
[65] CF – 00036; CF – 00013.
[66] CF – 00043; CF – 00020; "The tests generally used to determine actual cash value are the market value of the property, the reproduction or replacement cost of the property, and the broad evidence rule. Under the broad evidence rule, any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of the loss, including evidence of the fair market value and the replacement cost of the property, may be considered." *Kinlaw v. N. Carolina Farm Bureau Mut. Ins. Co.*, 389 S.E.2d 840, 844 (N.C. Ct. App. 1990)

5, 2020.[67]  The engine hours are low for a seven-year-old machine and could easily have a useful life of 20 to 25 years.  The first owners will put the most hours on the machine year-over-year.  As the machine ages, it will go to smaller farmers who will put fewer hours on the machine year-over-year.

With a useful life of 20 years, depreciation would be approximately 5% per year.  A 25-year useful life would result in depreciation of approximately 4% per year. [68]  It should be noted that North Carolina, in Executive Order 121, issued the first "stay at home order" because of COVID on March 30, 2020.[69]  Supply chain disruptions and misalignments because of COVID have created *cost-push* inflation.  In most cases, this type of inflation is transitory; the price rises, but then stabilizes at a higher level or decreases, with no further impact on inflation.  When Crum made the decision to deny coverage on May 11, 2021, the cost-push inflation would probably negate the depreciation since the purchase in June of 2020, eleven months previously.

All parties to an insurance contract are expected to be ethical in their dealings.  That is why insurance contracts are referred to as contracts "of utmost good faith" (in Latin, *uberrimae fidei*).  "*It is to the insured that the insurance company owes the contractual obligation of utmost good faith and fair dealing.*"[70]  In this matter, Crum had the knowledge and opportunity early in the claim to resolve this issue but chose not to.  The record is clear that, by email, IOC acknowledged the error made *before* Crum denied coverage for the claim.  Crum is aware that it collected a

---

[67] IOC-0116.

[68] "The proper test of actual cash value in a particular case depends upon the nature of the property insured, its condition, and other circumstances existing at the time of the loss." *Surratt v. Grain Dealers Mutual Ins. Co.,* 74 N.C.App. 288, 293, 328 S.E.2d 16, 20 (1985).

[69] https://governor.nc.gov/media/1774/open, accessed August 9, 2022.

[70] James J. Markham, *The Claims Environment* (Malvern: The Insurance Institute, 1993) p. 18.  Doris Hoopes, *The Claims Environment, 2nd ed.* (Malvern: The Insurance Institute, 2000) p. 10.4.

premium on the AgCO equipment that Mr. Jones had no insurable interest in, and to this date, has not returned the premium to Mr. Jones.

While acknowledging that the Crum claim file has not been produced, by all appearances Crum failed to reasonably investigate the claim, failed to settle the claim, and compelled litigation. Crum's actions failed to meet the standard of care expected of an insurance company. In considering the various claims handling customs and practices, the record reviewed to date demonstrates Crum's failing to comply with reasonable and commercially acceptable standards for acting in the best interest of Crum's insured, Adam Jones. The claims handling failures and deficiencies by Crum referenced are a non-exhaustive list.

*"The primary duty of the claim representative is to deliver the promise to pay. Therefore, the claim representative's chief task is to seek and find coverage, not to seek and find coverage controversies or to deny or dispute claims."*[71] In this adjusting situation, Crum has chosen to deny coverage for an actual cash value loss of $173,750,[72] (which is below the renewal policy limits of $210,000) because the incorrect equipment was erroneously described on the policy. Mr. Jones had no financial interest in the AgCO equipment, and Crum rightfully could deny coverage for a hypothetical claim for damage to the AgCo equipment based on the loss condition previously discussed.

### Conclusion

*"Policyholders buy peace of mind and are not seeking commercial advantage when they buy a policy. In addition, they are vulnerable at the time of the loss."*[73]

---

[71] James J. Markham, *The Claims Environment* (Malvern: The Insurance Institute, 1993) p. 13.
[72] Declaration of Adam Jones, ¶ 8.
[73] James J. Markham, *The Claims Environment* (Malvern: The Insurance Institute, 1993) pp. 274 – 278.

14

Adam Jones DBA: Triple J Farms was the named insured that Crum accepted, and Crum has not denied coverage based on the named insured. Crum maintained a constant rate per $100 of the value of $1.40 over the two policy terms. Crum agreed to provide insurance on a combine and header for $210,000, albeit the wrong description was provided. Nothing in the available facts indicates that Crum would not have insured it with the correct description and there is no indication that Crum would be prejudiced. Mr. Jones has provided documentation that the value of the combine and header he owned was $173,750, which is 82.7% of the $210,000 policy limit, creating a surcharged rate of $1.69 per $100 of valuation. Crum, despite knowing that the described AgCO equipment was never at risk, kept the premium.

Because discovery is ongoing, I reserve the right to supplement or amend this report. The opinions outlined in this report by me are stated to a reasonable degree of professional certainty.

R. Bryan Tilden
CPCU, CLU, ARM, ALCM, ChFC, CIC

15