| | |
|---|---|
| ADAM JONES d/b/a TRIPLE J FARMS, and LAWVER INSURANCE & FINANCIAL SERVICES d/b/a INSURANCE OF THE CAROLINAS,<br><br>**Plaintiffs,**<br><br>v.<br><br>CRUM & FORSTER SPECIALTY INSURANCE COMPANY,<br><br>**Defendant.** | **DEFENDANT CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF R. BRYAN TILDEN** |

Defendant Crum & Forster Specialty Insurance Company ("Crum & Forster"), by and through undersigned counsel, and pursuant to Fed. R. Evidence 702 and 703, files this Memorandum in Support of its Motion to exclude the testimony of R. Bryan Tilden, and states as follows:

**INTRODUCTION**

In this matter, Lawver Insurance & Financial Services d/b/a Insurance of the Carolinas ("IOC") and Adam Jones d/b/a Triple J Farms ("TJF") (collectively, "Plaintiffs") ask the Court to reform or re-write a Policy of insurance issued by Crum & Forster to TJF (the "Policy") to have the Policy provide coverage to otherwise uncovered property.

To support their claims that the Policy should be reformed, Plaintiffs rely on reports from R. Bryan Tilden. Mr. Tilden's affirmative report improperly engages in the legal issue of insurance policy interpretation, discusses irrelevant issues likely to confuse the jury, and

provides opinions which are simply unsupported by anything other than his own personal, subjective beliefs.

Because Mr. Tilden's testimony will not assist the trier of fact in understanding the evidence or determining a fact in issue and, in fact, will only serve to confuse the jury, he should be precluded from testifying pursuant to Fed. R. Evidence 702 and 703.[1]

## **FACTUAL BACKGROUND**

Crum & Forster issued an insurance Policy to TJF, policy number BAK-56503-2, for the policy period of November 13, 2020 to November 13, 2021 (Exhibit A). The Policy insures only the equipment that is specifically identified on the Schedule of the Contractor Equipment Coverage Declarations. The Policy's main coverage grant states "We will pay for direct physical loss of or damage to Covered Property from any of the Covered Causes of Loss." (Exhibit A at CF 00014). The Policy then schedules specific property for which it provides coverage: a 2013 AgCo Gleaner combine, serial number RS7700DH17177, (the "AgCo Combine") with a limit of $180,000, and a 2013 AgCo header, serial number 92500CHD01576, (the "AgCo Header") with a limit of $30,000 (collectively, the "AgCo Equipment."). (Exhibit A at CF 00010).

Crum & Forster issued a Prior Policy to TJF, policy number BAK-56503-1, for the policy period of November 13, 2019 to November 13, 2020 (Exhibit B). The Prior Policy similarly provided property coverage, and provided coverage for scheduled equipment. Specifically, a 2014 Case Magnum Tractor, serial number ZERD03302 (the "Case Magnum

---

[1] In addition, Crum & Forster is entitled to summary judgment because Plaintiffs cannot prove by clear, cogent and convincing evidence that Crum & Forster intended to insure the New Holland Equipment. Crum & Forster's Motion for Summary Judgment is currently pending before the Court. (ECF 37-40).

Tractor") with a limit of $130,000, and a 2013 New Holland combine, serial number YDG116796, (the "New Holland Combine") with a limit of $150,000. (Exhibit B at CF 00068; 00085).

After the Prior Policy had already expired, IOC requested "combine insurance renewal effective as of 11/13/2020 if possible." (Exhibit C at CF 00096). However, IOC's request did not list any information about the equipment to be insured, including the manufacturer, model, and year, but only included a value for the equipment of $280,000. (Exhibit D at CF 00101). As a result, Crum & Forster requested information about the equipment to be insured under the Policy. In response, IOC provided an application (the "Policy Application"), which listed the manufacturer, model number, year, serial number, and values for the AgCo Equipment. (Exhibit E at CF 00105). In addition, prior to submitting the AgCo Equipment for coverage under the Policy, IOC advised the broker, RT Specialty ("RT"), that TJF was leasing that very same AgCo Equipment. (Exhibit F at IOC 0005). Relying on the information provided by IOC, Crum & Forster bound coverage for the AgCo Equipment listed in the Policy Application. (Exhibit A; Exhibit G at CF 00109; Exhibit H at ¶ ¶ 5-9).

On March 21, 2021, the New Holland Combine, valued at $150,000, and a 2008 New Holland header, serial number 92500CHD01576 ("New Holland Header") valued at $14,500 (collectively, the "New Holland Equipment") were damaged in a fire. (Exhibit I). On March 22, 2021, IOC submitted a loss notice, on behalf of TJF, for "Combine and Header burned up in fire." (Exhibit I).

In April 2021, IOC informed RT that the equipment that was damaged in the fire on March 21, 2021, was the New Holland Equipment, and not the AgCo Equipment insured under the Policy. (Exhibit J at IOC 0283.05). IOC also informed RT that in November 2020

they meant to list the New Holland Equipment on the Policy Application, but negligently submitted the AgCo Equipment instead. (Exhibit J at IOC 0283.02; Exhibit H at ¶ 12).

After Crum & Forster appropriately denied coverage for equipment not listed on the Policy, Plaintiffs filed a Complaint in North Carolina state court. The case was subsequently removed to this Court. (ECF 1). The Complaint asserts a claim for reformation, a claim for damages, and a claim for unfair trade practices. (ECF 1, Exhibit 2 at Claims for Relief).

## THE EXPERT REPORTS

On August 12, 2022, Plaintiffs served the affirmative expert report of Mr. Tilden. (Exhibit K).

Mr. Tilden bases his opinions on conclusions which have no support in the Policy's language or any identifiable authority. For instance, Mr. Tilden states that:

- "An insurance policy is a personal contract because it protects not property, liability, lives, or health, but people." Mr. Tilden cites no authority for this proposition, and it is contradicted by the Policy's express language. (Exhibit K at p. 10).

- There is "no instance where the premium on the AgCo Equipment was returned to Mr. Jones." (Exhibit K at p. 12). This statement has already been proven to be demonstrably false. (Exhibit L).

- That accounting for "depreciation" as well as "[s]upply chain disruptions and misalignments" and "cost-push inflation" the value of the New Holland Equipment was $173,750. No authorities valuing farming equipment or analyzing "cost-push inflation" are cited, and Mr. Tilden does not assert he is qualified to value farming equipment or opine on economics. (Exhibit K at p. 12).

- "Crum failed to reasonably investigate the claim, failed to settle the claim, and compelled litigation. Crum's actions failed to meet the standard of care expected of an insurance company. In considering the various claims handling customs and practices, the record reviewed to date demonstrates Crum's failing to comply with reasonable and commercially acceptable standards for acting in the best interest of Crum's insured, Adam Jones." Again, no authorities or documents are cited in support of this broad, conclusory opinion. (Exhibit K at p. 14).

Mr. Tilden also engages in the legal issue of policy interpretation, providing his interpretation of the "Loss Payment" condition in the Policy, the Policy's Commercial Inland Marine Conditions, and the Policy's "actual cash value" definition. (Exhibit K at p. 11-14).

On or about September 13, 2022, Crum & Forster served the report of Ernest Csiszar. (Exhibit M). Mr. Csiszar's opinion refutes Mr. Tilden's unsupported assertions. For example, Mr. Csiszar states that Mr. Tilden's claim that the Policy insured people and not property, "is just not how property insurance works. Crum & Forster's policy number BAK-56503-2 covered property, not people, and the property it covered was the AgCo farm equipment." (Exhibit M at p. 15, ¶ 53). Mr. Csiszar supports this opinion with citation to the relevant policy language, as well as principles of the insurance industry. (Exhibit M at p. 16-17, ¶ 56; p. 19-20, ¶¶ 66-69). Mr. Csiszar further identified that the true errors in this action lie with IOC, whose internal communications reveal repeated failures to identify TJF's farming equipment. (Exhibit M at p. 12-14, ¶¶ 39-46; p. 18, ¶ 60). Moreover, as Mr. Csiszar explains, Mr. Tilden's reliance on the "Loss Payment" condition, is fatally flawed. (Exhibit M at p. 17, ¶ 57).

In response, Plaintiffs served Mr. Tilden's rebuttal report dated October 3, 2022. (Exhibit N.) In his rebuttal report, Mr. Tilden again engages in irrelevant issues, such as "rate structure" and what is "material" to the underwriting of a policy. (Exhibit N at p. 5-6). Mr. Tilden also, again, engages in the interpretation of Policy terms, improperly providing his interpretation of the Policy's "Loss Payment" condition. (Exhibit N at p. 7).

## **LEGAL ARGUMENT**

### A.      **Standard on a Motion to Exclude Expert Testimony**

The admissibility of an expert opinion is governed by Rules 702 and 703 of the Federal Rules of Evidence and the Supreme Court's landmark rulings in Daubert v. Merrell Dow

Pharmaceuticals, Inc., 509 U.S. 579 (1993); Gen. Elec. Co. v. Joiner, 522 U.S. 136 (1997); and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999).

Rule 702 provides that a witness "who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge **will help the trier of fact to understand the evidence or to determine a fact in issue** [.]" (emphasis added).

Obviously, testimony must be "relevant" to the issues in a case if it is to assist the trier of fact. Daubert, 509 U.S. at 594–95. An expert's opinion is relevant if it "fit[s]" the facts of the case. Daubert, 509 U.S. at 591–92. Indeed, Rule 702 "requires a valid ... connection to the pertinent inquiry as a precondition to admissibility." Kumho Tire, 526 U.S. 137, 149 (quoting Daubert, 509 U.S. at 592). "This ensures that the expert 'helps the trier of fact to understand the evidence or to determine a fact in issue.'" Sardis v. Overhead Door Corp., 10 F.4th 268, 281 (4th Cir. 2021) (quoting Nease v. Ford Motor Co., 848 F.3d 219, 229 (4th Cir. 2017)). An inapplicable standard that "does not even apply to" the facts at issue "categorically lacks 'a valid scientific connection to the pertinent inquiry'" and is "the touchstone of irrelevancy." Sardis, 10 F.4th at 289. "Simply put, if an opinion is not relevant to a fact at issue, Daubert requires that it be excluded." Id. at 281.

Rule 702 allows expert testimony "on scientific matters, technical matters, or matters involving other specialized knowledge so long as the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." United States v. Offill, 666 F.3d 168, 175 (4th Cir.2011) (emphasis and internal quotation marks omitted). "The touchstone of the rule is whether the testimony will assist the jury." Id. "Expert testimony that merely states a

legal conclusion is less likely to assist the jury in its determination." United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002).

Finally, with respect to Rule 703, the rule requires an expert's opinion be based "on facts or data in the case that the expert has been made aware of or personally observed" or "on those kinds of facts or data" "reasonably relied on" by experts in the field. Rule 702 similarly "requires courts to evaluate the 'reliability' of expert testimony, including a consideration of whether testimony is 'the product of reliable principles and methods.'" Yates v. Ford Motor Co., 2015 WL 2189774, at *16 (E.D.N.C. May 11, 2015) (quoting Rule 702). Accordingly, "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." Tyger Const. Co. Inc. v. Pensacola Const. Co., 29 F.3d 137, 142 (4th Cir. 1994). It is part of the court's role as gatekeeper, "to ensure that the 'testimony both rests on a reliable foundation and is relevant to the task at hand.'" In re Lipitor (Atorvastatin Calcium) Mktg., Sales Pracs. & Prod. Liab. Litig. (No II) MDL 2502, 892 F.3d 624, 631 (4th Cir. 2018) (quoting Daubert, 509 U.S. at 597).

Here, there are three main reasons why Mr. Tilden's opinions do not pass muster under Rule 702, Rule 703, and Daubert. First, Mr. Tilden opines on materiality, premium, and the degree of risk insured under the Policy. These opinions are irrelevant to the legal standard for reformation and the central issue of whether the parties to the contract (Crum & Forster and TJF) intended to have the Policy provide coverage for the New Holland Equipment. As such, Mr. Tilden's opinions are likely to confuse the jury.

Moreover, Mr. Tilden improperly engages in the interpretation of insurance policy provisions, a purely legal issue which is for the Court to undertake as a matter of law.

Finally, Mr. Tilden states opinions which are inherently unreliable as they are unsupported by any citation to relevant authority, and are directly contradicted by the documents at issue. As such, his testimony should be excluded pursuant to Rules 702 and 703.

**B.      Mr. Tilden's Opinion on Issues Irrelevant to Reformation Are Likely to Confuse the Jury.**

This is a reformation case.  Simply put, Plaintiffs seek to have the Court reform or re-write an insurance policy to provide more favorable terms than what is written in the contract.

Under North Carolina law, a party seeking the extraordinary remedy of reformation must establish (1) the existence of a mutual mistake of fact, and (2) a resultant failure of the document as executed to reflect the parties' intent. Suarez v. Food Lion, Inc., 100 N.C. App. 700, 704, 398 S.E.2d 60, 63 (1990) (citation omitted).  The relevant issues therefore are whether there was a mutual mistake of fact and whether the policy reflects the parties' true intent.  See Branch Banking & Trust Co. v. Chicago Title Ins. Co., 214 N.C. App. 459, 463-64, 714 S.E.2d 514, 518 (2011); see also Hice v. Hi-Mil, Inc., 301 N.C. 647, 650-51, 273 S.E.2d 268, 270 (1981).

Mr. Tilden's initial report does not address the issue of mutual mistake at all, and both of his reports discuss matters not relevant to the legal standard for reformation.  Because the discussion of irrelevant issues is likely to confuse a jury, his testimony should be excluded.

Throughout Mr. Tilden's reports is a discussion of whether a re-write of the policy would have an effect on the premium charged, and he concludes that because a re-write of the policy would not have a material effect on the premium charged, the Policy should be re-

written to provide coverage for unlisted vehicles post-loss. Since this is not the legal standard for reformation, this discussion is likely to confuse a jury.[2]

If this were the legal standard for reformation, a party could, for instance, enter into an agreement to purchase a dozen apples and then sue the other party for not supplying a dozen oranges because the price would have been the same. Similarly, here, it is irrelevant that Crum & Forster would have charged a similar premium for the New Holland Equipment if IOC requested insurance for it during the application process.[3] The only relevant issue in this case is whether Crum & Forster and TJF both made a mistake and intended the Policy to cover the New Holland Equipment. Because Mr. Tilden's opinions and conclusions are irrelevant to the issue of mutual mistake, his testimony should be barred.

In Sardis, the Fourth Circuit reversed a trial court opinion after the trial court had allowed an expert to opine on a "design standard that [did] not even apply to the product at issue." Sardis, 10 F.4th 268, 289. Similarly, in Nease, the Fourth Circuit held that the expert

---

[2] It appears that Mr. Tilden has conflated reformation with rescission, an entirely different equitable remedy that has a separate legal standard. In a rescission case, the insurer is seeking to rescind or cancel the policy due to a material misrepresentations in the insured's application. See e.g., Evanston Ins. Co. v. G & T Fabricators, Inc., 740 F. Supp. 2d 731, 736 (E.D.N.C. 2010). In this case, an insurer is not seeking to rescind a policy. Rather, the insured and his agent are seeking to reform a Policy.

[3] Unlike reformation, rescission is available if there is a material misrepresentation made when applying for insurance. A "misrepresentation in an application for an insurance policy is material if the knowledge or ignorance of it would naturally influence the judgment of the insurer in making the contract, or in estimating the degree and character of the risk, or in fixing the rate of premium." Tharrington v. Sturdivant Life Ins. Co., 115 N.C. App. 123, 126-27, 443 S.E.2d 797, 800 (1994). See also Goodwin v. Investors Life Insurance, North America, 332 N.C. 326, 331, 419 S.E.2d 766, 769 (1992); Tolbert v. Insurance Co., 236 N.C. 416, 418, 72 S.E.2d 915, 917 (1952). The factors to be considered in evaluating whether rescission is appropriate are identical to the four broad opinions provided by Mr. Tilden in his report. Cf. (Exhibit K at p. 9).

opinion should have been excluded when the expert applied a Failure Mode and Effects Analysis that was inapplicable to the vehicle at issue. Nease, 848 F.3d 219, 232-33.

Mr. Tilden's opinion goes even further afield than the experts in Sardis and Nease. Mr. Tilden not only applies an irrelevant standard, the standard he applies is applicable to an entirely separate legal theory. A "party seeking reformation must establish both (1) the existence of a mutual mistake of fact, and (2) a resultant failure of the document as executed to reflect the parties' intent." Sudds v. Gillian, 152 N.C. App. 659, 661-62, 568 S.E.2d 214, 217 (2002). Mr. Tilden's report does not, at any point, use the term "mistake." He makes no effort to opine on the facts and issues actually at stake in this litigation. Instead, he discusses "the degree and character of the risk" and "the rate of premium." Tharrington, 115 N.C. App. at 127, 443 S.E.2d at 800. Cf. (Exhibit K at p. 9). While Mr. Tilden's opinions on these issues would have a place in a case about rescission, this is a reformation case.

Because Mr. Tilden's opinions on materiality, premium, and the degree of risk insured under the Policy are entirely irrelevant to the reformation claim before the Court, they must be excluded.

**C.      Mr. Tilden's Opinion Attempts to State a Legal Conclusion**

Mr. Tilden's opinions on the purely legal issue of contract interpretation should also be rejected.  Under North Carolina law, and the law of contracts in general, an insurance policy is to be interpreted as a matter of law. See Parker v. State Cap. Life Ins. Co., 259 N.C. 115, 117, 130 S.E.2d 36, 38 (1963); Trophy Tracks, Inc. v. Mass. Bay Ins. Co., 195 N.C. App. 734, 738, 673 S.E.2d 787, 790 (2009).

Consistent with this principle, courts applying North Carolina law, and courts in the Fourth Circuit in general, have consistently rejected expert opinions related to insurance

policy interpretation. <u>See</u> <u>Shea Homes, LLC v. Old Republic Nat. Title Ins. Co.</u>, 2007 WL 3334210, at *6 (W.D.N.C. Nov. 5, 2007) (precluding expert testimony from three witnesses on the effect of insurance policy terms; court stated "[i]t is well-established that an expert may not proffer opinions regarding the legal effect of the contract."); <u>Smith v. Childs</u>, 112 N.C. App. 672, 679-80, 437 S.E.2d 500, 506 (1993) (finding trial court erred in allowing expert to testify regarding unambiguous contract provision). <u>See</u> <u>also</u> <u>Schneider v. Continental Cas. Co.</u>, 989 F.2d 728, 731 (4th Cir.1993) (finding district court erred in considering expert opinions regarding whether exclusion in insurance contract precluded coverage).

Here, Mr. Tilden provides his interpretation of the "Loss Payment" condition in the Policy, the Policy's Commercial Inland Marine Conditions, and the Policy's "actual cash value" definition. (Exhibit K at p. 11-14). Mr. Tilden's opinions on the effect and interpretation of insurance policy provisions must be rejected as nothing more than legal conclusions. The interpretation and effect of policy provisions is for the Court alone to determine as a matter of law. <u>E.g.,</u> <u>Accardi v. Hartford Underwriters Ins. Co.</u>, 373 N.C. 292, 294, 838 S.E.2d 454, 456 (2020) ("In North Carolina, determining the meaning of language in an insurance policy presents a question of law for the Court.")

**D.      Mr. Tilden's Unsupported Opinions Must be Excluded**

Finally, Mr. Tilden's unsupported conclusions – stated without citation, and which contradict the documents produced in this action – are inherently unreliable, without foundation, and are not based "on those kinds of facts or data" "reasonably relied on" by experts in the field. <u>F.R.E.</u> 703. As such, they must be excluded.

It is well-settled that "[w]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." <u>Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.</u>, 509 U.S. 209, 242 (1993). <u>See also</u> J<u>. Truett Payne Co. v. Chrysler Motors Corp.</u>, 451 U.S. 557, 564-65 (1981) (referring to expert economic testimony not based on "documentary evidence as to the effect of the discrimination on retail prices" as "weak" at best).

Moreover, "[a]n expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record." <u>Tyger Const.</u>, 29 F.3d 137, 142. Expert testimony should further be excluded if it does not rest on a reliable foundation. <u>In re Lipitor</u>, 892 F.3d 624, 631.

Mr. Tilden claims "[a]n insurance policy is a personal contract because it protects not property, liability, lives, or health, but people." (Exhibit K at p. 10). Mr. Tilden cites no authority for this proposition. Indeed, Mr. Tilden could not credibly cite any authority in support of this opinion given it is directly contradicted by the terms of the Policy: "We will pay for direct physical loss of or damage ***to Covered Property*** from any of the Covered Causes of Loss." (Exhibit A at CF 00014) (emphasis added). <u>See also</u> (Exhibit M at p. 16-17, ¶ 56; p. 19-20, ¶ ¶ 66-69).[4] Because Mr. Tilden's unsupported opinions cannot pass muster under Rules 702 and 703, they must be excluded. <u>Brooke Grp.</u>, 509 U.S. 209, 242.

In addition, Mr. Tilden opines that there is "no instance where the premium on the AgCo Equipment was returned to Mr. Jones." (Exhibit K at p. 12). Not only does Mr. Tilden

---

[4] In fact, Mr. Tilden contradicts his absurd claim that an insurance policy does not protect property when he describes himself as a "property" insurance agent in his CV. (Exhibit K at ex. A, p. 2).

supply zero support for this conclusion, it is misleading since Crum & Forster transferred the premium back to RT on April 21, 2021. (Exhibit L). Crum & Forster was later informed that Mr. Jones could not receive the premium since it was paid by an outside vendor and that Mr. Jones defaulted on payment to that vendor. Regardless, Mr. Tilden's conclusion that Crum & Forster is somehow liable for its actions in this regard should be excluded since it is not grounded in fact.

Similarly, Mr. Tilden's discussion of "depreciation" as well as "[s]upply chain disruptions and misalignments" and "cost-push inflation" (Exhibit K at p. 12) is not supported by citation, or relevant experience in accounting or economics.[5]

Mr. Tilden also does not support his conclusion that

> Crum failed to reasonably investigate the claim, failed to settle the claim, and compelled litigation. Crum's actions failed to meet the standard of care expected of an insurance company. In considering the various claims handling customs and practices, the record reviewed to date demonstrates Crum's failing to comply with reasonable and commercially acceptable standards for acting in the best interest of Crum's insured, Adam Jones.

(Exhibit K at p. 14). Indeed, there are no authorities or documents cited in support of this broad, outrageous opinion that an insurer is obligated to pay a meritless claim.

---

[5] Mr. Tilden cannot claim that his purported "expertise" as an insurance agent suddenly allows him to quantify the value of farming equipment. E.g., Kadel v. Folwell, 2022 WL 3226731, at *6 (M.D.N.C. Aug. 10, 2022) ("an expert qualified in one field may be unqualified to testify in others."); Cooper v. Lab'y Corp. of Am. Holdings, 150 F.3d 376, 380–81 (4th Cir. 1998) (court held a witness who had "a general knowledge of chemistry" and "experience with breath alcohol testing" was not an expert in "the field of urine alcohol testing"). There is simply no basis for Mr. Tilden's valuation opinion and it must be rejected.

Also, the opinion that Crum & Forster "failed to meet the standard of care expected of an insurance company" ignores the following facts which the Court has already determined to be undisputed:

- The 2020-2021 application submitted by IOC on behalf of Jones only listed AgCo equipment.

- IOC did not submit a 2020-2021 policy application on Jones's behalf to C&F requesting coverage for New Holland equipment.

- IOC did not alert C&F or its broker that the 2020-2021 application and resulting policy contained the wrong name or serial number of the equipment to be insured until after the equipment was destroyed.

(Exhibit O). Simply put, Mr. Tilden's report fails to address IOC's failures, and points the finger at Crum & Forster through assertions and allegations that are not supported by citation to authority, documents in the record, or relevant experience. Because Mr. Tilden's conclusions are made without foundation, and are not based "on those kinds of facts or data" "reasonably relied on" by experts in the field (F.R.E. 703), they should be excluded.

## CONCLUSION

For the foregoing reasons, it is respectfully requested that the Court grant Crum & Forster's Motion and exclude Mr. Tilden's testimony.

# CERTIFICATION OF LENGTH AND FORMAT

The undersigned counsel certifies that this Motion is in compliance with L.R. 7.2(f)(2) and has a word count of 4227 words.

This the 23rd day of February, 2023.

**JAMES, McELROY & DIEHL, P.A.**

By: /s/ Alexandra B. Bachman
 Adam L. Ross, NC State Bar No. 31766
Alexandra B. Bachman, NC State Bar No. 54746
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone:  (704) 372-9870
Facsimile:  (704) 348-0800
Email: aross@jmdlaw.com
         abachman@jmdlaw.com

Kristin V. Gallagher (*pro hac vice*)
kristin.gallagher@kennedyslaw.com
Frank M. Falcone (*pro hac vice*)
Frank.falcone@kennedyslaw.com
Kennedys CMK LLP
120 Mountain View Boulevard
Basking Ridge, NJ 07920
Tel: (908) 848-1220

*Counsel for Defendant*
*Crum & Forster Specialty Insurance Company*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that the foregoing **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF R. BRYAN TILDEN** has this date been electronically filed with the Clerk of Court using the CM/ECF system, which generates a notice of electronic filing constituting service hereof, to the following counsel of record:

Michael T. Medford
Manning, Fulton & Skinner, P.A.
3605 Glenwood Avenue, Suite 500
P.O. Box 20389
Raleigh, NC 20389
Fax: 919-325-4618
Email: medford@manningfulton.com
*Attorneys for Lawyer Insurance and Financial Services d/b/a Insurance of the Carolinas*

R. Steven DeGeorge
Spencer T. Wiles
Robinson Bradshaw & Hinson, P.A.
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Fax: 919-328-8790
Email: sdegeorge@robinsonbradshaw.com
swiles@robinsonbradshaw.com
*Attorneys for Adam Jones d/b/a Triple J Farms*

This the 23rd day of February, 2023.

**JAMES, McELROY & DIEHL, P.A.**

By: /s/ Alexandra B. Bachman
Adam L. Ross
Alexandra B. Bachman
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 348-0800
Email: aross@jmdlaw.com
abachman@jmdlaw.com

Kristin V. Gallagher (*pro hac vice*)
kristin.gallagher@kennedyslaw.com
Frank M. Falcone (*pro hac vice*)
Frank.falcone@kennedyslaw.com
Kennedys CMK LLP
120 Mountain View Boulevard
Basking Ridge, NJ 07920
Tel: (908) 848-1220
*Counsel for Defendant*
*Crum & Forster Specialty Insurance Company*