# EXHIBIT K

Civil Action No. 7:22-cv-00025-FL

| | |
|---|---|
| ADAM JONES d/b/a TRIPLE J FARMS and LAWVER INSURANCE & FINANCIAL SERVICES d/b/a INSURANCE OF THE CAROLINAS, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) |

**DESIGNATION AND DISCLOSURE OF EXPERT WITNESS BY PLAINTIFFS ADAM JONES d/b/a TRIPLE J FARMS and LAWVER INSURANCE & FINANCIAL SERVICES d/b/a INSURANCE OF THE CAROLINAS**

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs Adam Jones d/b/a Triple J Farms and Lawver Insurance & Financial Services d/b/a Insurance of the Carolinas ("Plaintiffs"), by and through undersigned counsel, designate and disclose the following expert witness who is expected to provide opinion testimony at the trial of this matter:

R. Bryan Tilden
526 Red Gate Road
Pittsboro, North Carolina 27312-7934

Mr. Tilden's expert report, curriculum vitae, and other information required to be produced pursuant to Rule 26(a)(2) is attached hereto as Exhibit 1.

Discovery in this matter is ongoing, and thus Plaintiffs and Mr. Tilden expressly reserve their rights to amend and supplement the opinions expressed in the expert report attached hereto as Exhibit 1. In addition, Plaintiffs reserve the right to amend or supplement their expert

designation as necessary and to designate supplemental experts based upon future discovery of any nature, future testimony of witnesses, or opinions or testimony of any expert designated by Defendant Crum & Forster Specialty Insurance Company.

This the 12th day of August, 2022.

       /s/ Michael T. Medford .
Michael T. Medford, N.C. State Bar # 7227
Brianne M. Glass, N.C. State Bar #56491
MANNING, FULTON & SKINNER, P.A.
 *Attorneys for Lawver Insurance and Financial*
 *Services d/b/a Insurance of the Carolinas*
3605 Glenwood Avenue - Suite 500
Post Office Box 20389
Raleigh, North Carolina  27619
Telephone: (919) 787-8880
Facsimile: (919) 325-4600
E-mail:  medford@manningfulton.com
     glass@manningfulton.com

       /s/ Spencer T. Wiles
R. Steven DeGeorge, N.C. State Bar # 20723
Spencer T. Wiles, N.C. State Bar # 53664
ROBINSON BRADSHAW & HINSON, P.A.
 *Attorneys for Plaintiff Adam Jones d/b/a Triple J*
 *Farms*
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone: (704) 377-8374
Facsimile: (704) 373-3974
E-mail:  sdegeorge@rbh.com
     swiles@robinsonbradshaw.com

- 2 -

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that a copy of the foregoing ***Designation and Disclosure of Expert Witness by Plaintiffs Adam Jones d/b/a Triple J Farms and Lawver Insurance & Financial Services d/b/a Insurance of the Carolinas*** was duly served this date on the following by forwarding a copy thereof via E-Mail and U.S. Mail, addressed as follows:

Adam L. Ross
Alexandra B. Bachman
JAMES, McELROY & DIEHL, P.A.
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Email:  aross@jmdlaw.com
        abachman@jmdlaw.com

Kristin V. Gallagher (*pro hac vice*)
Martin Harms (*pro hac vice*)
Kennedys CMK LLP
120 Mountain View Boulevard
Basking Ridge, NJ 07920
Email: kristin.gallagher@kennedyslaw.com
        martin.harms@kennedyslaw.com

      *Attorneys for Defendant*
      *Crum & Forster Specialty Insurance Company*

This 12th day of August, 2022.

             /s/ Michael T. Medford      .
      Michael T. Medford, N.C. State Bar # 7227
      Brianne M. Glass, N.C. State Bar #56491
      MANNING, FULTON & SKINNER, P.A.
      *Attorneys for Lawver Insurance and Financial*
      *Services d/b/a Insurance of the Carolinas*
      3605 Glenwood Avenue - Suite 500
      Post Office Box 20389
      Raleigh, North Carolina  27619
      Telephone:    (919) 787-8880
      Facsimile:    (919) 325-4600
      E-mail:    medford@manningfulton.com
             glass@manningfulton.com

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ADAM JONES d/b/a TRIPLE J FARMS and LAWVER INSURANCE & FINANCIAL SERVICES d/b/a INSURANCE OF THE CAROLINAS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| v. | ) ) | 7:22-cv-00025-FL |
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

Expert Report of
R. Bryan Tilden, CPCU, CLU, ARM, ALCM, ChFC, CIC, SCLA
TILDEN AND ASSOCIATES
Pittsboro, North Carolina
August 12, 2022

1

# PREFACE

I, R. Bryan Tilden, offer the following report containing a statement of my opinions and the basis and reasons thereof, the data or other information considered in forming the opinions, my qualifications, and the compensation I am to be paid.

I have been retained by Manning, Fulton, & Skinner, P.A., to review certain materials and to, in summary, provide my expert opinions relating to the procurement, servicing, and adjustment of an insurance policy, all as described in detail in this report.

I have over 48 years of experience in the insurance and risk management industry as an author, agent, broker, consultant, underwriter, drafter of policy forms and endorsements, teacher, historian, claim examiner, and consultant for both the insured and insurers. As a broker representing the insured, I have placed accounts in the international insurance market, including coordinated placements with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, and European insurance companies. I have worked with Lloyd's brokers, Lloyd's syndicates, United States, Canadian, British, Bermudian, and European companies in the drafting, underwriting, and placement of insurance policies marine and non-marine, and the adjustment of property and liability losses. I teach the construction, drafting, underwriting, adjusting, and analysis of insurance policies throughout the United States, Canada, the Caribbean, Bermuda, and the European Union. I have testified in the United States and London regarding the above subject matters. I am familiar with the international insurance and domestic marketplace's custom and practices, including the London, European, Caribbean, Canadian, Bermudian, and United States markets.

I am not an attorney, and nothing in this report should be construed as a legal opinion in any way. My opinions are based on custom and practice in the insurance industry that come to bear on this matter. At the same time, it is not possible to review the handling of matters without reference to industry rules, regulations, policy terms and conditions, the claimed loss, and the transactions at issue. If any of the terminology or concepts used in this report has any overlap or congruence with legal terms, please be aware that the terms are not being used as legal terms; rather, they are used as terms of art within the insurance industry which are commonly used and understood in the industry.

My curriculum vitae are attached hereto as Exhibit A. I prepared this report after reviewing the documents listed below. My billing rate for consulting expert and expert witness work is $300 an hour.[1] Because discovery is ongoing, I reserve the right to supplement or amend this report based on the new information. These are my opinions to a reasonable degree of professional certainty.

## Documents Considered

1. Complaint;

2. Answer, Affirmative Defenses, and Counterclaim;

3. Plaintiff's Rule 26 Initial Disclosures;

4. Defendant's Rule 26 Initial Disclosures;

5. Declaration of Libby Ashley including Exhibit A;

---

[1] No portion of my compensation is dependent upon the result of this litigation.

3

6. Declaration of Adam Jones, including Exhibits A, B, and C

7. Crum & Foster Document Production BATES CF – 00001 – BATES CF – 00123;

8. Insurance of the Carolinas Document Production BATES IOC-0001 – IOC-0321;

9. Adam Jones Production BATES JONES-001 – JONES-003;

10. Kennedys letter of July 7, 2021, to Michael T. Medford of Manning, Fulton & Skinner, P.A.; and

11. Kennedys letter of July 15, 2021, to Michael T. Medford of Manning, Fulton & Skinner, P.A.

## __Background__

Libby Ashley was employed by Lawver Insurance & Financial Services d/b/a Insurance of the Carolinas ("IOC").[2] She is licensed as an insurance agent by the State of North Carolina.[3] The term insurance agent, or agent, refers to an intermediary who arranges contracts of insurance between a specific insurer with which they have an ongoing relationship and prospective insureds. The prospective insured is the customer.

IOC, as an independent agency, is a business operated for the benefit of its owner (or owners), that sells insurance, usually as a representative of several unrelated insurers. As an intermediary between insurers and insurance buyers, it can collect premiums and remit them to an insurance company.

---

[2] Declaration of Libby Ashley, ¶ 3.
[3] Declaration of Libby Ashley, ¶ 2.

RT Specialty describes itself as a leading wholesale distributor of specialty insurance products and services.[4] It is unclear from the file, but RT Specialty could have been acting as a managing general agent ("MGA") in this matter. An MGA is an authorized agent of the primary insurer that manages all or part of the primary insurer's insurance activities, usually in a specific geographic area. RT Specialty is also a surplus lines broker. Surplus lines brokers have access to insurers that have the capacity to provide the needed insurance, which might not be available from insurers licensed to do business in the state.

RT Specialty provided a quotation for $130,000 contractors' equipment coverage for a 2014 Case Magnum Tractor with a proposed effective date of October 30, 2019.[5] Crum and Forster Specialty Insurance Company ("Crum") issued policy BAK-56503-1 effective November 13, 2019, to Adam Jones DBA: Triple J Farms for the 2014 Case Magnum Tractor.[6] Because of the policy stamping on the declarations page, the Crum placement was a non-admitted placement.[7] Change endorsement #1 effective November 13, 2019, amended the mailing address.[8]

On May 12, 2020, Ms. Ashley requested a quotation on a 2020 New Holland C245 with a limit of $81,000, and coverage was bound on May 15, 2020.[9] Endorsement #2 was issued reflecting the change.[10] On May 27, 2020, Ms. Ashley requested a quotation to add two pieces of

[4] https://rtspecialty.com/, accessed August 9, 2022.
[5] IOC-0010 – IOC-0028; IOC-0240 – IOC-0258.
[6] IOC-0030 – IOC-0051; IOC-0062 – IOC-0084; IOC-0259 – IOC-0281; CF – 00024 – CF – 00046; Declaration of Libby Ashley, ¶ 5; Declaration of Adam Jones, ¶ 4.
[7] CF – 00025.
[8] IOC-0056; CF – 00047.
[9] IOC-0125 – IOC-0125.03; IOC-0126 – IOC-0126.03; IOC-0127 – IOC-0127.03.
[10] CF – 00048 – CF - 00049.

5

leased equipment, a 2013 AgCO Gleaner combine and a 2012 AgCO Gleaner header to the existing policy.[11] Details on these pieces of equipment are on an internal application.[12]

On May 30, 2020, Ms. Ashley requested a quotation to add a 2013 CR7090 New Holland Combine to the policy.[13] In response, Thomas Burke of RT Specialty pointed out that with the outstanding AgCO quotation pending, adding the New Holland would exceed the total insured value of $500,000 on the policy.[14]

Information was provided to Ms. Ashley by MTS Jerseyville Inc. on June 2, 2020, on the 2013 New Holland Combine CR7090 for Adam Jones.[15] MTS was advised on June 3, 2020, that IOC was awaiting instructions from Mr. Jones on the addition of the equipment.[16] On June 5, 2020, Ms. Ashley requested that the 2013 New Holland Combine CR7090 be added to the policy.[17] By endorsement #3, the New Holland Combine CR7090 was added for $150,000.[18] This endorsement was forwarded to IOC on June 8, 2020.[19]

---

[11] IOC-0004 – IOC-0006; Declaration of Libby Ashley, ¶ 6; Declaration of Adam Jones, ¶ 5.
[12] IOC-0131 – IOC-0131.02.
[13] IOC-0008 – IOC-0009; Declaration of Libby Ashley, ¶ 6; Declaration of Adam Jones, ¶ 5.
[14] IOC-0008.
[15] IOC-0115 – IOC-0115.02; IOC-0116.
[16] IOC-0133 – IOC-0133.02.
[17] IOC-0007; CF – 00050 – CF – 00051; Declaration of Libby Ashley, ¶ 7 & 8; Declaration of Adam Jones, ¶ 8.
[18] IOC-0108; IOC-0139 – IOC-0139.02.
[19] IOC-0138 – IOC-0138.02; IOC-0140; CF – 00052 – CF – 00053.

In response to a phone call from Mr. Jones, on June 9, 2020, a confirmation of what pieces of equipment were insured was discussed internally:[20]

| Description | Value | Endorsement Number |
|---|---|---|
| 2014 Case Magnum Tractor | $130,000 | Initial policy[21] |
| 2020 New Holland C245 | $81,000 | Added #2[22] & #4[23] Removed # 5[24] & #6[25] |
| 2013 New Holland Combine CR7090 | $150,000 | Added #3[26] |

On June 12, 2020, endorsement #4 was forwarded to IOC adding a 2020 New Holland C245 for $81,000.[27]

On August 5, 2020, Addie Henry advised Ms. Ashley of two New Holland round bailers and a front-end loader and promised Mr. Jones would provide serial numbers.[28] Mr. Jones inquired about the status of his insurance on August 12, 2020.[29] Ms. Ashley, on August 12, 2020, followed up on Mr. Jones' payment and policy change quotations to add additional equipment.[30] RT Specialty was advised the same day that the 2020 New Holland C245 tractor needed to be removed because it was added twice.[31] The first instance was removed by endorsement #5.[32] Endorsement #6 removed the second instance of the tractor, with the coverage limit reduced to $280,000.[33] On

---

[20] IOC-0132.
[21] CF – 00068.
[22] CF – 00083.
[23] CF – 00087.
[24] CF – 00089.
[25] CF – 00091.
[26] CF – 00085.
[27] IOC-0135 – IOC-0135.02; IOC-0136; IOC-0137.
[28] IOC-0128; IOC-0128 – IOC-0128.02.
[29] IOC-0121 – IOC-0121.03.
[30] IOC-0109 – IOC-0109.03.
[31] IOC-0141 – IOC-0141.03.
[32] CF – 00054 – CF – 00055.
[33] CF – 00056 – CF – 00057.

August 26, 2020, RT Specialty provided another copy of the policy to answer the question of what was on the policy, up to and including endorsement #6.[34]

RT Specialty provided a renewal quotation on October 5, 2020.[35] Ms. Ashley provided forms to Mr. Jones to process the renewal on the 2013 New Holland Combine CR7090.[36] RT Specialty provided a reminder on November 16, 2020, that the policy had expired and requested renewal instructions.[37] On November 18, 2020, Ms. Ashley requested the policy renewal.[38] A statement of no loss was executed by Mr. Jones on November 19, 2020.[39] Signed forms were sent to RT Specialty on November 23, 2020.[40] Crum issued renewal policy BAK-56503-2 effective November 13, 2020, with Adam Jones DBA: Triple J Farms as the named insured.[41]

In response to RT Specialty's November 23, 2020, email, Ms. Ashley erroneously completed the application showing Mr. Jones' combine and header as an AgCO Combine and Header with total limits of $210,000.[42] Crum issued renewal policy BAK-56503-2 effective November 13, 2020, with the named insured Adam Jones DBA: Triple J Farms.[43] Mr. Jones' equipment was erroneously described as AgCO and insured for $180,000 and the header for $30,000, instead of the New Holland equipment.[44] The combine and header were the only equipment covered by the policy at that time.[45]

---

[34] CF – 00058 – CF – 00092.
[35] IOC-0218 – IOC-0221; IOC-0282 – IOC-0282.06.
[36] IOC-0188 – IOC-0190.
[37] IOC-0205.
[38] IOC-0210; CF – 00096.
[39] CF – 00098.
[40] IOC-0216; CF – 00093 – CF – 00095.
[41] IOC-0085 – IOC-0107; CF – 00001 – CF – 00023; Declaration of Adam Jones, ¶ 10.
[42] IOC-0052 – IOC-0054; Declaration of Libby Ashley, ¶ 9; Declaration of Adam Jones, ¶ 13.
[43] IOC0010; IOC-0218; Declaration of Adam Jones, ¶ 11.
[44] IOC-0094.
[45] CF – 00010.

## The Losses

The first notice of loss was provided on March 22, 2021.[46] RT Specialty acknowledged the loss on March 23, 2021.[47] On April 9, 2021, Mr. Jones was advised by Crum that the AgCO Gleaner equipment was the only listed item on the policy.[48] On May 7, 2021, Ms. Hancock advised RT Specialty of the error. On May 11, 2021, Crum advised that coverage was not available for the claim as the involved equipment was not on the schedule.[49]

## Opinions

In reviewing the documents, four facts become patently obvious:

1. The cost of risk, or the rate charged, remained constant over the two policies at $1.40 per hundred of value, regardless of the equipment listed;[50]

2. Crum had agreed to insure the New Holland Combine CR7090 in the first policy as reflected in endorsement #3,[51] and there is nothing in the available facts to indicate that Crum would not have insured it in the renewal policy if correctly named;

3. There is nothing in the available facts to show that Crum was prejudiced by the fact the description was incorrect and in fact, received a surcharged premium on the New Holland Equipment; and

---

[46] CF – 00106 – CF – 00108; Declaration of Libby Ashley, ¶ 15.
[47] IOC-0055.
[48] IOC-0151 – IOC-0152; IOC-0150.
[49] IOC-0001 – IOC-0003; CF – 00121 – CF – 00123; Declaration of Adam Jones, ¶ 12.
[50] IOC-0218.
[51] CF – 00085.

9

4. The only underwriting restriction was that the scheduled limit could be no more than $500,000.[52] At the time of loss, the scheduled limit was $210,000.[53]

*"Because of the personal relationship formed in an insurance transaction, the insurance company should not place its interests above the insured's."* "*The claim professional handling claims should honor the company's obligations under the implied covenant of good faith and fair dealings.*"[54]

An insurance policy is a personal contract because it protects not property, liability, lives, or health, but people. Moreover, the identity of the people it insures is highly relevant to the insurance company. Insurance companies are interested in preserving their rights to select insureds with whom they are willing to enter into contractual agreements and to reject others.

This concept has important ramifications. For one thing, an insurance company underwriter may carefully evaluate the personal characteristics of the person(s) applying for insurance. The insurance company has an obvious interest in avoiding moral and morale hazards[55] by declining to issue insurance policies to people who present unacceptable hazards. The important underwriting goal can be achieved only when the underwriter knows the identity of the insured.

---

[52] IOC-0008.

[53] IOC-0094.

[54] James J. Markham*, The Claims Environment* (Malvern: The Insurance Institute, 1993) p. 13.

[55] A *moral hazard* is a condition that exists when a person may try to intentionally cause a loss or may exaggerate a loss that has occurred. A *morale hazard* is a condition that exists when a person is less careful than he or she should be, knowing that insurance will respond in the event of loss.

An insurance company has the unquestioned right to select those whom it will insure and to rely upon the prospective insured for such information as it desires as a basis for its determination to the end that wise discrimination may be exercised in selecting its risks.

Perhaps the most fundamental of insurance principles is the principle of indemnity. This principle underscores one of the most basic tenets of insurance – that the role of insurance is to put insureds back into the same financial position they enjoyed before the occurrence of an insured event, but insurance is not intended to enrich them unjustly.

The *principle of indemnity* is the concept that insurance contracts should confer a benefit no greater in value than the loss suffered by an insured.[56] Stated in the negative, the principle of indemnity means simply that *a person should not profit from an insured loss.*

Crum, in the Commercial Inland Marine Conditions, CM 00 01 09 04,[57] described this concept in E. Loss Payment. The endorsement states, in E.2., that "[w]e will not pay you more than your financial interest in the Covered Property." This condition makes the insurance policy comply with North Carolina Chapter 58, Insurance, § 58-1-10, Contract of Insurance.

This policy condition supports the principle of indemnity by ensuring that only those parties who suffer financial loss are indemnified, and then only to the extent of their loss. Requiring an insurable interest prevents individuals or organizations from wagering (gambling) by insuring an event from which they would not suffer a loss and then profiting when that event occurs. In addition, because the insurable interest requirement limits insureds' ability to profit from insurance, the incentive to cause loss intentionally (moral hazard) is reduced.

---

[56] Robert E. Keeton and Alan I. Widiss, *Insurance Law*, 1988, p. 135.
[57] CF – 0034; CF –11.

*"Insureds purchase insurance to pay for losses, for peace of mind, and to benefit society by reducing social burdens. When insurers do not provide those benefits of insurance, they cause just the opposite: unpaid losses, great stress, and burdens on society."*[58]  *"Claim service includes prompt and courteous conduct, good communication, and prompt payment."[59]*

The AgCO equipment erroneously[60] was described in the renewal policy instead of the New Holland equipment with a limit of $210,000 resulting in a premium before taxes and fees of $2,940.[61]  Mr. Jones had no financial interest in the $210,000 of AgCO equipment described in the policy.[62]  Mr. Jones would not meet the Commercial Inland Marine Condition stating that "[w]e will not pay you more than your financial interest in the Covered Property," as he had no financial interest in the AgCO equipment.[63]  In reviewing the Crum document production, I find no instance where the premium on the AgCO equipment was returned to Mr. Jones.[64]

The Crum policies provided coverage on an actual cash value basis.[65]  The policies also contain an endorsement that defines actual cash value.[66]  Actual cash value takes into account the effects of both economic inflation (which tends to increase some property values over time) and depreciation (which tends to reduce most property values over time).  Mr. Jones purchased the 2013 combine with 1227 engine hours/984 threshing hours and 2008 head for $173,750 on June

---

[58] Doris Hoopes, *The Claims Environment, 2nd ed.* (Malvern: The Insurance Institute, 2000) p. 9.2.

[59] Doris Hoopes, *The Claims Environment, 2nd ed.* (Malvern: The Insurance Institute, 2000) p. 12.1.

[60] Affidavit of Libby Ashley, ¶ 9.

[61] IOC-0086.  ($210,000/100) x $1.40 = $2,940.  Taxes and fees resulted in a policy premium of $3,348.76.

[62] Affidavit of Adam Jones, ¶ 9.

[63] CF – 0034; CF –11.

[64] Affidavit of Adam Jones, ¶ 18, ¶ 22.

[65] CF – 00036; CF – 00013.

[66] CF – 00043; CF – 00020; "The tests generally used to determine actual cash value are the market value of the property, the reproduction or replacement cost of the property, and the broad evidence rule. Under the broad evidence rule, any evidence logically tending to the formation of a correct estimate of the value of the insured property at the time of the loss, including evidence of the fair market value and the replacement cost of the property, may be considered." *Kinlaw v. N. Carolina Farm Bureau Mut. Ins. Co.*, 389 S.E.2d 840, 844 (N.C. Ct. App. 1990)

12

5, 2020.[67]  The engine hours are low for a seven-year-old machine and could easily have a useful life of 20 to 25 years.  The first owners will put the most hours on the machine year-over-year.  As the machine ages, it will go to smaller farmers who will put fewer hours on the machine year-over-year.

With a useful life of 20 years, depreciation would be approximately 5% per year.  A 25-year useful life would result in depreciation of approximately 4% per year. [68]  It should be noted that North Carolina, in Executive Order 121, issued the first "stay at home order" because of COVID on March 30, 2020.[69]  Supply chain disruptions and misalignments because of COVID have created *cost-push* inflation.  In most cases, this type of inflation is transitory; the price rises, but then stabilizes at a higher level or decreases, with no further impact on inflation.  When Crum made the decision to deny coverage on May 11, 2021, the cost-push inflation would probably negate the depreciation since the purchase in June of 2020, eleven months previously.

All parties to an insurance contract are expected to be ethical in their dealings.  That is why insurance contracts are referred to as contracts "of utmost good faith" (in Latin, *uberrimae fidei).* "*It is to the insured that the insurance company owes the contractual obligation of utmost good faith and fair dealing.*"[70]  In this matter, Crum had the knowledge and opportunity early in the claim to resolve this issue but chose not to.  The record is clear that, by email, IOC acknowledged the error made _before_ Crum denied coverage for the claim.  Crum is aware that it collected a

---

[67] IOC-0116.

[68] "The proper test of actual cash value in a particular case depends upon the nature of the property insured, its condition, and other circumstances existing at the time of the loss." *Surratt v. Grain Dealers Mutual Ins. Co.,* 74 N.C.App. 288, 293, 328 S.E.2d 16, 20 (1985).

[69] https://governor.nc.gov/media/1774/open, accessed August 9, 2022.

[70] James J. Markham*, The Claims Environment* (Malvern: The Insurance Institute, 1993) p. 18.  Doris Hoopes*, The Claims Environment, 2nd ed.* (Malvern: The Insurance Institute, 2000) p. 10.4.

premium on the AgCO equipment that Mr. Jones had no insurable interest in, and to this date, has not returned the premium to Mr. Jones.

While acknowledging that the Crum claim file has not been produced, by all appearances Crum failed to reasonably investigate the claim, failed to settle the claim, and compelled litigation. Crum's actions failed to meet the standard of care expected of an insurance company. In considering the various claims handling customs and practices, the record reviewed to date demonstrates Crum's failing to comply with reasonable and commercially acceptable standards for acting in the best interest of Crum's insured, Adam Jones. The claims handling failures and deficiencies by Crum referenced are a non-exhaustive list.

"*The primary duty of the claim representative is to deliver the promise to pay. Therefore, the claim representative's chief task is to seek and find coverage, not to seek and find coverage controversies or to deny or dispute claims.*"[71] In this adjusting situation, Crum has chosen to deny coverage for an actual cash value loss of $173,750,[72] (which is below the renewal policy limits of $210,000) because the incorrect equipment was erroneously described on the policy. Mr. Jones had no financial interest in the AgCO equipment, and Crum rightfully could deny coverage for a hypothetical claim for damage to the AgCo equipment based on the loss condition previously discussed.

<u>Conclusion</u>

"*Policyholders buy peace of mind and are not seeking commercial advantage when they buy a policy. In addition, they are vulnerable at the time of the loss.*"[73]

---

[71] James J. Markham, *The Claims Environment* (Malvern: The Insurance Institute, 1993) p. 13.
[72] Declaration of Adam Jones, ¶ 8.
[73] James J. Markham, *The Claims Environment* (Malvern: The Insurance Institute, 1993) pp. 274 – 278.

Adam Jones DBA: Triple J Farms was the named insured that Crum accepted, and Crum has not denied coverage based on the named insured. Crum maintained a constant rate per $100 of the value of $1.40 over the two policy terms. Crum agreed to provide insurance on a combine and header for $210,000, albeit the wrong description was provided. Nothing in the available facts indicates that Crum would not have insured it with the correct description and there is no indication that Crum would be prejudiced. Mr. Jones has provided documentation that the value of the combine and header he owned was $173,750, which is 82.7% of the $210,000 policy limit, creating a surcharged rate of $1.69 per $100 of valuation. Crum, despite knowing that the described AgCO equipment was never at risk, kept the premium.

Because discovery is ongoing, I reserve the right to supplement or amend this report. The opinions outlined in this report by me are stated to a reasonable degree of professional certainty.

R. Bryan Tilden
CPCU, CLU, ARM, ALCM, ChFC, CIC

15

*Curriculum Vitae*
*of*

**R. Bryan Tilden**
526 Red Gate Road
Pittsboro, North Carolina 27312-7934
*Office:* 919.542.1042 • *Fax:* 919.542.6255 • *E-mail:* tilden@mindspring.com

**EDUCATION:**

**Senior Claim Law Associate,** 2008
AMERICAN EDUCATIONAL INSTITUTE, INC.
Basking Ridge, New Jersey

**Chartered Financial Consultant,** 1983
THE AMERICAN COLLEGE
Bryn Mawr, Pennsylvania

**Associate in Loss Control Management**, 1983
INSURANCE INSTITUTE OF AMERICA
Malvern, Pennsylvania

**Associate in Risk Management**, 1982
INSURANCE INSTITUTE OF AMERICA
Malvern, Pennsylvania

**Chartered Life Underwriter**, 1982
THE AMERICAN COLLEGE
Bryn Mawr, Pennsylvania

**Chartered Property Casualty Underwriter**, 1980
THE AMERICAN INSTITUTE FOR PROPERTY AND LIABILITY UNDERWRITERS
Malvern, Pennsylvania

**Certified Insurance Counselor**, 1978
SOCIETY OF CERTIFIED INSURANCE COUNSELORS
Austin, Texas

**HONORS/ACTIVITIES:**

Active, Continuing Education for CPCUs, Society of Chartered Property Casualty Underwriters, 2021 - 2024

Grading Panel Member, The American Institute for Property and Liability Underwriters

Grading Panel Member, Insurance Institute of America

National Faculty Member, Society of Certified Insurance Counselors

Faculty, ACORD Power of Change Workshop, 1995 to present

Faculty, Independent Insurance Agents Virtual University, commentator to ISO, AAIS and ACORD

Ernest F. Young Education Award, 1988

North Carolina Independent Agent of the Year, 1989

Frequent contributor the *The John Liner Letter* articles on Business Income, CGL, Auto, Risk Management

Reviewer, various CPCU and Insurance Institute textbooks

**MEMBERSHIPS:**     International Association of Arson Investigators

Professional Liability Underwriting Society

Society of Certified Insurance Counselors

Society of Chartered Property Casualty Underwriters

Society of Claims Law Associates

Society of Financial Service Professionals

**LICENSES:**     Property and Liability Agent, North Carolina, New Jersey

Life and Health Agent, North Carolina, New Jersey

Medicare Supplement and Long Term Care Agent, North Carolina

**EXPERIENCE:**     April 1997 to Present
**Training and Consulting**
Tilden & Associates
Pittsboro, North Carolina

September 1995 to March 1997
**Director of Technical Affairs**
Independent Insurance Agents of North Carolina, Inc.
Raleigh, North Carolina

March 1990 to August 1995
**Director of Education**
Independent Insurance Agents of North Carolina, Inc.
Raleigh, North Carolina

September 1983 to March 1990
**Account Executive**
Chapel Hill Insurance Agency, Inc.
Chapel Hill, North Carolina

September 1979 to July 1983
**Vice President**
Thomas Rutherfoord, Inc.
Roanoke, Virginia

December 1978 to September 1979
**Account Executive**
Marsh & McLennan, Inc.
Washington, DC

July 1974 to December 1978
**Account Executive**
Herb Holland Company, Inc.
Chapel Hill, North Carolina

**PUBLICATIONS:**     The CPCU Society. "A Guide to the CGL Aggregate Limits",
http://www.cpcusociety.org/learning/campus/how.shtml , 1999

The CPCU Society, "A Guide to the Motor Carrier Act",
http://www.cpcusociety.org/learning/campus/how.shtml, 1999

The CPCU Society, "A Guide to Value Reporting Form", http://www.cpcusociety.org/learning/campus/how.shtml. 1999

R. Bryan Tilden, *1999 Business Auto Policy, Changes and Issues* (Albany: Professional Insurance Agents, 1999)

----, *2000 Commercial Property Changes* (Malvern: The CPCU Society, 2000)

----, *2000 Homeowners Policy Changes* (Malvern: The CPCU Society, 2000)

----, *2001 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2001)

----, *2001 Business Automobile Policy Changes* (Pittsboro, NC: Tilden and Associates, 2001)

----, *2002 Commercial Property Changes* (Malvern: The CPCU Society, 2002)

----, *2004 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2004)

----, *2007 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2007)

---- *2008 Commercial Property Changes* (Malvern: The CPCU Society, 2008)

----, *2010 Automobile Policy Changes* (Malvern: The CPCU Society, 2011)

----, *2011 Homeowners Policy Changes* (Malvern: The CPCU Society, 2011)

----, *2012 Commercial Property Policy Changes* (Malvern: The CPCU Society, 2013)

----, *2013 Commercial General Liability Policy Changes* (Malvern: The CPCU Society, 2013)

----, *Additional Insured* (Austin: Society of Certified Insurance Counselors, Inc., 1996, 2005, 2013; Malvern: The CPCU Society, 1999, 2001, 2004, 2005, 2013, 2019)

----, *Advanced Business Income* (Malvern: The CPCU Society, 1990 – 2016)

----, *Advanced Inland Marine* (Malvern: The CPCU Society, 2000)

----, *Advanced Pollution Liability* (Malvern: The CPCU Society, 1999 - 2021)

----, *Arson and the Insurance Contract* (Austin: Society of Certified Insurance Counselors, Inc., 1998, 2004, 2012, 2022)

----, *Bonus Life and Non-Qualified Deferred Compensation Plans* (Pittsboro, NC: Tilden and Associates, 1998)

----, *Budgeting* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1995)

R. Bryan Tilden and Donald Malecki, *Builders Risk, Wrap-Ups and Course of Construction* (Malvern.  The CPCU Society, 2006)

R, Bryan Tilden, *Business Automobile Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1993, 1994, 1997, 1999, 2002, 2004, 2005, 2006, 2010, 2013)

----, *Business Owner's Policy* (Austin: Society of Certified Insurance Counselors, Inc., 1990 – 2002, 2010, 2013)

----, *Claims Handling* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Closing Gaps in Property Insurance* (Malvern: The CPCU Society, 1999, 2007, 2015)

----, *Commercial Account, The* (Malvern: The CPCU Society, 1999, 2001, 2005)

----, *Commercial Crime Program* (Austin: Society of Certified Insurance Counselors, Inc., 1988, 1991, 1992, 1999, 2000, 2006, 2013; Malvern: The CPCU Society, 2000, 2006, 2009, 2013)

----, *Commercial General Liability Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1992, 1994, 1996, 1997, 1998, 1999, 2001, 2004, 2007, 2013, 2019)

----, *Commercial Property Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Commercial Property Causes of Loss Forms* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Contract Bonds* (Pittsboro, NC: Tilden and Associates, 1999)

R. Bryan Tilden and Donald Malecki, *Contractual Risk Transfer* (Malvern. The CPCU Society, 2005)

R. Bryan Tilden, *Director's and Officer's Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1997; 2002, 2022 Malvern: The CPCU Society, 1998, 2000, 2002, 2022)

----, *Disability Income and Long Term Care Insurance* (Pittsboro, NC: Tilden and Associates, 2006)

----, *Employee Leasing – The New CGL.* Counselor C93 #6 December (1993): 1-4

----, *Employment Related Practices* (Pittsboro, NC: Tilden and Associates, 1999, 2011, 2015)

----, *Endorsements to the Commercial Property Coverage Part* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1996, 2001, 2008, 2012)

----, *Essentials of Legal Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1995)

----, *Essentials of Life Insurance* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1991)

----, *Estate Planning* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Estate Planning Techniques, Gifts, Trusts and Family Limited Partnerships* (Pittsboro, NC: Tilden and Associates, 2000)

R. Bryan Tilden and Donald Malecki, *Evolution of the CGL* (Malvern. The CPCU Society, 2007)

Case 7:22-cv-00025-FL   Document 53-13   Filed 02/23/23   Page 23 of 28

R. Bryan Tilden, *Excess Liability and Commercial Umbrella Policies* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1995, 1997, 2013)

----, *Flood Insurance*, (Austin: Society of Certified Insurance Counselors, Inc., 1998)

----, *Garage Policy* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1993, 1994, 1998, 2006)

----, *Hidden Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1995, 1997, 2000; Malvern: The CPCU Society, 1998, 2004, 2010, 2013, 2022)

----, *Homeowner's Policy* (Pittsboro, NC: Tilden and Associates, 1998, 2001, 2011)

----, *Homeowner's Tricks and Traps* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1993, 1997, 2001, 2013, 2022)

----, *How to Determine the Financial Stability of an Insurance Company* <u>Agents Journal</u> Spring (1985) 18 - 19

----, *Human Resources* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1996)

----, *Insurance Fraud* (Pittsboro, NC: Tilden and Associates, 2001)

----, *Insurance Statute and Rules Update, An Agents' Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1991)

----, *Insuring Contractors* (Malvern: The CPCU Society, 1998, 1999, 2004, 2007, 2013)

----, *Insuring Defective Construction* (Malvern:  The CPCU Society, 2002, 2004, 2007, 2013; Austin: Society of Certified Insurance Counselors, 2002, 2004, 2007, 2013, 2019)

----, *Insuring the E-Commerce Account* (Malvern: The CPCU Society, 2000 – 2019)

----, *Insuring the In Home Business* (Austin: Society of Certified Insurance Counselors, 1998)

----, *Insurance Valuation Problems* (Malvern: The CPCU Society, 1997 – 2021)

----, "It's a Crime Not to Insure! Use New Crime Forms for the Best Coverage," *Resources* (The National Alliance for Insurance Education & Research), (Spring 2001), pp. 10-13.

----, *Law and the Life Insurance Contract* (Pittsboro, NC: Tilden and Associates, 2002)

----, *Leased Properties Exposures* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1997, 2005; Malvern: The CPCU Society, 1998, 2001, 2005, 2013)

----, *Liability Issues and Solutions* (Austin: Society of Certified Insurance Counselors, Inc., 1998)

R. Bryan Tilden and Donald Malecki, *Malecki and Tilden on the CGL,* (Malvern. The CPCU Society, 2003, 2004, 2005)

R. Bryan Tilden, *Medicare Supplement and Long Term Care* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1991, 1992)

----, *Mergers, Acquisitions and Joint Ventures* (Malvern: The CPCU Society, 2001; Austin: Society of Certified Insurance Counselors, Inc., 2002, 2013)

----, *More Personal Lines Questions and Answers* (Pittsboro, NC: Tilden and Associates, 1997)

----, *N.C. Insurance Statutes and Rules Update, An Agents' Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1992)

----, *Personal Auto Policy* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1990, 1993)

----, *Personal Auto Policy* (Pittsboro, NC: Tilden and Associates, 1999)

----, *Personal Lines Questions and Answers* (Malvern: The CPCU Society, 1997, 1998, 2012)

----, *Personal Lines, Troublesome Problem Areas* (Indianapolis: Independent Insurance Agents of Indiana, 1997, 1998)

----, *Pollution Liability Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1991, 1998, 2012)

----, *Pollution and Environmental Liability Coverages* (Malvern: The CPCU Society, 1999 – 2021)

R. Bryan Tilden and John P. Young, *Pre-Licensing Guide* (Raleigh: Independent Insurance Agents of North Carolina, Inc., 1988, 1993)

R. Bryan Tilden, *Professional Liability* (Austin: Society of Certified Insurance Counselors, Inc., 1994, 1996, 1998)

----, *Problems and Solutions in Buy-Sell Agreements* (Pittsboro, NC: Tilden and Associates, 1998).

----, *Products and Completed Operations* (Malvern: The CPCU Society, 1999)

----, *Properly Insuring Churches, Clubs, Civic Groups and Other Not-For-Profit Organizations* (Austin: Society of Certified Insurance Counselors, Inc., 1991, 1998, 2001)

----, *Property & Liability Innovations and Solutions* (Austin: Society of Certified Insurance Counselors, Inc., 1998, 1999, 2001)

----, "Puzzled About Commercial Auto?" *Resources* (The National Alliance for Insurance Education & Research), (Fall/Winter 2001), pp. 8-9.

----, *Rental Car Exposures and Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1988, 1990, 1992, 1999)

----, *Shared Ownership of Property* (Austin: Society of Certified Insurance Counselors, Inc., 1989, 1990, 2001)

----, *Small Employer Group Benefits* (Raleigh, NC: Independent Insurance Agents of North Carolina, Inc., 1992)

----, *Solving Troublesome Liability Issues* (Austin, Society of Certified Insurance Counselors, Inc., 2016 – 2021)

----, *Solving Troublesome Property Issues* (Austin, Society of Certified Insurance Counselors, Inc., 2016 – 2021)

----, *Split Dollar Plans* (Pittsboro, NC: Tilden and Associates, 1998)

----, *Time Element Coverages* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1996, 2001, 2008, 2012)

----, *Tips, Tricks and Traps of the CGL* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1998, 1999, 2012; Malvern: The CPCU Society, 2000 – 2021)

----, *Toxic Mold, Where Is The Coverage?* (Malvern: The CPCU Society, 2003, 2004, 2008, 2010, 2013)

----, *Umbrella and Excess Liability* (Malvern, The CPCU Society, 2004, 2013)

----, *Underwriting Workers Compensation* (Pittsboro, NC: Tilden and Associates, 2003)

----, *Utilizing the New Commercial Coverages* (Albany: Professional Insurance Agents, 2003)

----, *Will the Policy Pay for Rebuilding?* Professional Agent February 1998: 24 - 27

----, *Workers' Compensation* (Austin: Society of Certified Insurance Counselors, Inc., 1990, 1992, 1997, 2012)

----, *Workers' Compensation: Treating the Exposure* (Malvern: The CPCU Society, 2000)

----, *Workers' Compensation: Underwriting* (Malvern: The CPCU Society, 2000)

**CASES PAST 4 YEARS:**  *Carlos Perez Diaz, et al, v. Banco Popular de Puerto Rico, et al,* CAC 2017-0014, Court of First Instance, Superior Part of Arecebo, Commonwealth of Puerto Rico.

*Conrad Sales Group, LLC d/b/a Bay Hill Seafood v. Joseph Clyde Jenkins, Jr., Jenkins Insurance Agency, Inc. and Nationwide Mutual Insurance Company,* 16 CVS 493, Superior Court of Guilford County, North Carolina.

*Patsy E. Holden, et al, v. Tedford and Associates, LLC, et al,* CJ-2018-188, District Court of Rogers County, Oklahoma.

*Whitney J. Cagle v. Westfield Insurance Company*, 1816-CV22073, Circuit Court of Jackson County, Missouri, at Independence.

*Buckley, LLP v. Series 1 of Oxford Insurance Company NC, LLC,* 19-CVS-2118, Superior Court of Mecklenburg County, North Carolina.

*Woodland Park Baptist Church v. Selective Insurance Company of South Carolina*, 1:19-cv-00280, United States District Court for the Eastern District of Tennessee, Southern Division.

*Natural Blend Vegetable Dehydration, LLC, v. <u>SIA Group, Inc.</u>*, 4:19-CV-42-BR, In the United States District Court for the Eastern District of North Carolina, Eastern Division.

<u>*Mutual Benefit Insurance Company*</u> *v. R. Gates Construction Co., Inc.,* 1:20-cv-69. United States District Court for the District of Maryland, Baltimore Division.

*Americas Leading Finance, LLC v. <u>QBE Seguros Puerto Rico, et al</u>*, SJ2018CV08332, Court of First Instance, Superior Part of San Juan, Commonwealth of Puerto Rico.

*Mt. Hawley Insurance Company v. <u>Carriage Hill Associates of Charleston, LLC, et al</u>*, 2:19-cv-02550-RMG, United States District Court, District of South Carolina, Charleston Division.

*Brian Shanahan, et al, v. <u>Brett Balsley and BCA Insurance Group,</u>* ATL-L-1387-18, Superior Court of New Jersey, Law Division, Atlantic County.

*<u>TJS Leasing & Holding Company, Inc., v. <u>Peoplelease, LLC</u></u>*, 2:19-cv-02550-RMG, United States District Court, District of South Carolina, Charleston Division.

*Alex Chrysanithopoulos, et al, v. <u>Bay Agency Insurance Group,</u> et al,* L-1054-19, Superior Court of New Jersey, Law Division, Monmouth County.

*Nicole Kozak, et al, v. <u>Michelle Yeomans and Mid Florida Crop Insurance Agency, Inc.,</u>* 18-CA-000715, Circuit Court of the Twentieth Judicial Circuit, Hendry County, Florida.

*Ashley and Benjamin Remick v. <u>Travelers Home and Marine Insurance Company,</u>* 7:19-cv-0254-DCC, United States District Court, District of South Carolina, Spartanburg Division.

*Pennsylvania National Mutual Casualty Insurance Company v. <u>Beach Mart, Inc. and L&L Wings, Inc.,</u>* 2:14-cv-00008-FL, United States District Court for the Eastern District of North Carolina, Eastern Division.

*DMM Associates, LLC, v. Ohio Security Insurance Company, <u>David Jurisz, and Lakeside Insurance Brokers,</u>* 7:27-cv-20-6879, District Court, County of Hennepin, Fourth Judicial District, State of Minnesota.

*Continental Western Insurance Company v. <u>ASAO Hauling LLC and Michael Krumm</u> v. Naught-Naught Insurance Agency,* 2:20-cv-4063-NKL, United States District Court for the Western District of Missouri, Central Division.

*Kathleen Jennings v. <u>The Travelers Home and Marine Insurance Company,</u>* 6:20-cv-00869-BHH, United States District Court for the District of South Carolina, Greenville Division.

*Grooms Property Management, Inc., et al, v. Muirfield Condominium Association, et al, v. <u>Holly Moore and TC Corporate Holdings, Inc., f/k/a TriSure Corporation</u>,* 20-CVS-269, Superior Court of Mecklenburg County, North Carolina.

*William G. Jenkins, Jr., as Receiver for JBS, LLC, d/b/a Jennings Building Systems v. <u>Turbeville Insurance Agency, Inc.,</u> et al,* 2018-CP-07-01948, In the Court of Common Pleas, Beaufort County, South Carolina, Fourteenth Judicial District.

*<u>Fireman's Fund Insurance Company</u> v. Regions Insurance Inc., et al,* SD File No: 3003-070, Private Arbitration.

*Palomino v. First Developers, LLC, v. <u>The Benefits Consulting Group, et al,</u>* HUD-L-4285-19, Superior Court of New Jersey, Law Division – Hudson County.

*Ecovest S&S Shelmore Development, LLC v. <u>Atlantic Shield Insurance Group, LLC,</u>* 2019-CP-10-954, Court of Common Pleas for the State of South Carolina, Charleston County.

*<u>Duke University</u> v. Endurance Risk Solutions Assurance Company,* 5:20-cv-672-BO, United States District Court for the Eastern District of North Carolina, Western Division.

*Wake Chapel Church, Inc. v. <u>Church Mutual Insurance Company,</u>* 5:21-cv-114-M, United States District Court for the Eastern District of North Carolina, Western Division.

*Wilson, et al, v. <u>Interwest Insurance Services, LLC,</u>* 34-2018-00239219, Superior Court of California In and For the County of Sacramento.

*Puerto Rico Highway and Transportation Authority v. <u>Mapfre Praico Insurance Company, et al</u>,* SJ2019CV09747, Commonwealth of Puerto Rico, Court of First Instance, San Juan Superior Division.

*American Recycling Services, Inc., et al, v. <u>Global Underwriters Agency, Inc.,</u> et al,* MID-L-8299-19, Superior Court of New Jersey, Law Division – Middlesex County.

*Riddhi Vinayak Hotels, LLC, D/B/A/ Suburban Extended Stay and Motel 6 v. <u>The Insurance Center, et al</u>,* 6:21-cv-1320-DCC, United States District Court for the District of South Carolina, Greenville Division.