# EXHIBIT N

**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ADAM JONES d/b/a TRIPLE J FARMS | ) | |
| and LAWVER INSURANCE & | ) | |
| FINANCIAL SERVICES d/b/a | ) | |
| INSURANCE OF THE CAROLINAS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. |
| v. | ) | 7:22-cv-00025-FL |
| | ) | |
| CRUM & FORSTER SPECIALTY | ) | |
| INSURANCE COMPANY, | ) | |
| Defendant. | ) | |
| | ) | |

Rebuttal Expert Report of
R. Bryan Tilden, CPCU, CLU, ARM, ALCM, ChFC, CIC, SCLA
TILDEN AND ASSOCIATES
Pittsboro, North Carolina
October 3, 2022

1

# PREFACE

I, R. Bryan Tilden, offer the following rebuttal report containing a statement of my opinions and the basis and reasons thereof, the data or other information considered in forming the opinions, my qualifications, and the compensation I am to be paid.

I have been retained by Manning, Fulton, & Skinner, P.A., to review certain materials and to, in summary, provide my expert opinions relating to rebutting the expert report of Ernest Csiszar.

My curriculum vitae are attached hereto as Exhibit A.  I prepared this report after reviewing the documents listed below.  My billing rate for consulting expert and expert witness work is $300 an hour.[1]  Because discovery is ongoing, I reserve the right to supplement or amend this report based on the new information.  These are my opinions to a reasonable degree of professional certainty.

## **Additional Documents Considered**

12. Crum & Forster's expert report of Ernest Csiszar;

13. Adam Jones' Responses to Defendant's First Requests for Production;

14. Adam Jones' Responses to Defendant's First Requests for Admission;

15. IOC's Responses to Defendant's First Requests for Production;

16. IOC's Responses to Defendant's First Requests for Admission;

17. Crum Declaration of Lori Coughlin;

---

[1] No portion of my compensation is dependent upon the result of this litigation.

18. IOC Supplemental Document Production BATES IOC-0322 – IOC-0345;

19. Jones Supplemental Document Production BATES JONES-004 – JONES-054;

20. Letter from Kennedys to Spencer Wiles, September 1, 2021;

21. June 2, 2020, Email from Libby Ashley to Thomas Burke;

22. June 5, 2020, Email from Libby Ashley to Thomas Burke;

23. CF 00190 – Endorsement Policy Change #3;

24. IOC's 2nd Supplemental Production, BATES IOC-0346 – IOC-0433;

25. Additional miscellaneous emails:

    a. IOC-0004;

    b. IOC-0007;

    c. IOC-0122;

    d. IOC-0123;

    e. IOC-0130;

    f. IOC-0339;

    g. IOC-0343;

26. Email from Michael Medford to Alexandra Bachman dated September 19, 2011;

27. Email from Kristin V. Gallagher to Michael Medford dated September 20, 2011;

28. Crum's Supplemental Response to Request for Admissions; and

29. Crum's Supplemental Response to Interrogatories and Request for Production of Documents.

# **Background**

This report is submitted in rebuttal to Ernest Csiszar's expert report dated September 13, 2022, for Crum. Although I disagree with many statements in Mr. Csizar's report, many of which misstate facts and misdescribe documents, I focus on those that may be material to the issues presented.

This case, as previously discussed in my Expert Report of August 12, 2022, involved fire damage to farm equipment on March 20, 2021. Crum & Forster Specialty Insurance Company ("Crum") issued policy number BAK-56593-2 effective November 13, 2020, to November 13, 2021 (the "2020-2021 Policy").

*Policy Was Not Cancelled as of Inception*

Mr. Csiszar, in ¶ 51 of his report, states that Crum canceled the policy to the inception date. Lori Coughlin, Executive Underwriter for Crum, in her Sworn Declaration of September 18, 2022, stated the same in ¶ 14. These statements are incorrect and misrepresent the documents reflecting the cancelation and refund.

The Crum policy was a premium financed policy.[2] After the fire, the premium finance company requested on April 6, 2021, that the 2020-2021 Policy be canceled for non-payment of premium to the premium finance company.[3] Crum issued Policy Change Number 3, canceling the coverage effective April 6, 2021, and returned $1,602.00 in premium while the endorsement stated

---

[2] JONES-023 – JONES-026; CF_00235 – CF_00236.
[3] CF_00240 – CF_00242.

that the full-term premium was $2,940.00.[4]  This was a short-rate cancellation, which is calculated at 90% of the pro-rata return premium.  (The pro-rata return premium is the premium for the period from the cancellation date of April 6, 2021, to scheduled end of the policy November 13, 2021).  If, as claimed by Mr. Csiszar's report and Ms. Coughlin's Sworn Declaration, the policy had been canceled *ab initio*, then the return premium would have been $2,940 plus taxes and fees.  The email from Crum's attorney dated September 21, 2022, confirms that this April 6, 2021, cancellation pursuant to the notice from the premium finance company is the cancellation being referred to.

Because Crum canceled the policy on April 6, 2021, after the loss, and the return premium was for the period of April 6, 2021, to the policy expiration date of November 13, 2021, Crum kept the premium from inception through the loss date of March 20, 2021.  This means that Crum accepted and kept the premium for a term of coverage that included the date of loss even though, in its view, there was no coverage provided under the policy.

*Accurate Description*

Mr. Csiszar, in ¶ 52 of his report, states that "what is being covered is the single most significant piece of information for the underwriter."  There are fewer classifications within commercial inland marine coverages than most other lines.  The reason is that there are a great number of policies, so just the selection of a type of policy amounts to classification.  Furthermore, there are a relatively small number of risks that buy each policy, and any further classification reduces the size of each class to the point that the experience would not be credible.

---

[4] CF_00190 – CF_00191.

Many times, such as in this case, the equivalent of classifying is conducted during the underwriting process when the applicant is fitted to the right policy. The policy requested and issued is a Contractors Equipment Coverage Form covering one combine and one header. This is the form that previously insured the New Holland Equipment and set the terms of the coverage. The pricing, in both policy terms, was $1.40 per hundred of value. The assessment of risk was the same for both policy periods. The only item that changed was an incorrect description (New Holland versus AgCO) that did not affect risk, insurability, or rate. The brand name of a combine is not material to the underwriting of a combine, just as the house number is not material to underwriting a dwelling. The only difference in premium is that Crum charged a higher premium on the AgCo equipment, because of slightly higher values using the same rate, which is a benefit and not a detriment to Crum.

*Rate Structure*

Mr. Csiszar, in ¶ 53, argues that Crum underwrote AgCo equipment, and the rate structure does not matter. In breaking down his opinion, he only offers speculation and not facts. This is evidenced by many sentences beginning with "what if" and concluding with "?". It is telling that Ms. Coughlin's Sworn Declaration does not state that Crum *would* not have written the New Holland Combine for the same or lower premium, only that Crum *did* insure the AgCo equipment,

Mr. Csiszar concludes that the Crum policy covers property, not people. This approach is novel in the world and is without support statutorily, by insurance contract design, and academically. In my Expert Report dated August 12, 2022, I presented the academic basis that a contract of insurance is a personal contract.

6

Without interpreting NCGS § 58-1-10, Contract of Insurance refers to "something in which the other party has an interest." In the custom and practice of the insurance industry, interest refers to financial interest. Jones did not have a financial interest in the AgCO equipment because he did not own or lease it.

Crum's 2020-2021 Policy states:[5]

### E. Loss Payment

1. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.
2. We will not pay you more than your financial interest in the Covered Property.

According to Mr. Csiszar's statement that Crum's policy "covered property, not people," Mr. Jones could have been indemnified *even if Mr. Jones had no financial interest* in the property. This outcome not only violates the plain reading of the insurance policy but also leads to wagering. If the property were insured versus the person, a benefit greater than the loss sustained would occur, and the insured *would profit from a loss*.

His statement that Crum's policy "covered property, not people" only accounts for physical hazards. It does not account for *moral hazard*, which is understood by insurance practitioners as a defect or weakness in human character that leads some people to exaggerate losses or intentionally cause them, in order to collect insurance proceeds. It also does not account for *morale hazards*, which is the tendency of people to be less careful about preventing losses when they are insured. Neither moral nor morale hazards are present in this case.

---

[5] JONES-041.

In his arguments, he researched the internet and found many prices and costs and uses that as a speculative basis reasoning that Crum *maybe, possibly,* would not have written the New Holland Equipment. He ignores the fact that Crum wrote the New Holland combine in the previous policy year and neither he nor Crum has provided any evidence that Crum's willingness to insure New Holland Equipment changed between the first and second policy year. He also ignores the fact that Mr. Jones is asking to be indemnified for an amount *less than* the schedule limit of $210,000. Mr. Csiszar and the Declaration of Ms. Coughlin do not state that the misdescription of the brand name actually affected underwriting in this case or that Crum would have declined to cover the New Holland Equipment or that Crum would have charged a higher premium if the misdescription had not occurred. In addition, none of the documents produced by Crum in discovery or otherwise reflect any guidelines or rules that make the brand misdescription material or indicate that Crum would have charged a higher premium or would not have been willing to insure the New Holland Equipment in the 2020-2021 Policy year.

*Mutual Mistake*

Mr. Csiszar, in ¶ 55, argues that there was no mutual mistake. This belies the record. The documents are clear that both policies intended that the policy was to cover a combine and header owned by Mr. Jones. On May 27, 2020, Libby Ashley, a licensed insurance agent with IOC Insurance of the Carolinas ("IOC"), requested a quotation on two pieces of AgCO equipment that Mr. Jones was considering leasing.[6] Ms. Ashley requested a second quotation for the New Holland Equipment on May 29, 2020.[7] Thomas Burke of RT Specialty, Crum's agent, pointed out to Libby Ashley, IOC Insurance of the Carolinas licensed insurance agent, that adding the New Holland

---

[6] IOC-0005.
[7] IOC-0008 – IOC-0009, IOC-0344 – IOC-0345.

Equipment would exceed the $500,000 maximum limit of the policy.[8]  Both quotations were provided to Mr. Jones around June 1, 2020.[9]  Mr. Jones decided to purchase the New Holland Equipment and not lease the AgCo equipment.[10]

After IOC presented the quotations to Mr. Jones and after learning of his decision to go with the New Holland Equipment, IOC advised Mr. Burke that Mr. Jones would not be adding the leased items (i.e., the AgCO equipment) because he was purchasing the New Holland equipment.[11] Mr. Csiszar, in ¶ 57 of his report incorrectly states "IOC did inform RT that TJF had leased the very same AgCo equipment."  This ignores the subsequent email in which IOC informed RT that Mr. Jones had decided to purchase the New Holland Equipment instead of leasing the AgCO equipment.  He mistakenly complains, based on his incorrect fact, that "this smacks of disingenuousness" by Mr. Jones claiming no insurable interest in the AgCo equipment.

Consistent with the custom and practice of the insurance industry, IOC, on November 13, 2020, requested from RT Specialty a "list of items currley [sic] covered so that we can process quote with AO [Auto Owners] on all but Combine."[12]  Crum's agent, RT Specialty, itself could not provide a list, just a copy of the expiring policy and certain endorsements.[13]

_____
                                        R. Bryan Tilden
                        CPCU, CLU, ARM, ALCM, ChFC, CIC

---

[8] IOC-0008, IOC-0344.
[9] IOC-0122.
[10] Declaration of Adam Jones ¶¶ 5 – 9; Declaration of Libby Ashley ¶¶ 6 – 7.
[11] IOC-0343.
[12] IOC-0057.
[13] IOC-0368.

9