UNITED STATES DISTRICT COURT
for the EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Civil Action No. 7:22-cv-00025-FL

| | | |
|---|---|---|
| ADAM JONES d/b/a TRIPLE J FARMS and LAWVER INSURANCE & FINANCIAL SERVICES d/b/a INSURANCE OF THE CAROLINAS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF R. BRYAN TILDEN** |
| v. | ) ) | |
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, | ) ) | |
| Defendant. | ) ) | |

Plaintiffs Adam Jones d/b/a Triple J Farms ["Mr. Jones"] and Lawver Insurance & Financial Services d/b/a Insurance of the Carolinas ["IOC"] [collectively, "Plaintiffs"] oppose Defendant Crum & Forster Specialty Insurance Company's ["Crum"] Motion to Exclude the Expert Testimony of R. Bryan Tilden [(ECF 52) & (ECF 53)] [the "Motion to Exclude"].

The expert reports and testimony of Mr. Tilden, as Plaintiffs' expert, apply to the facts of this case his knowledge and expertise from forty-eight years of "hands on" experience in the insurance industry in various capacities, including, but not limited to, as an insurance agent, broker, underwriter, claims examiner, consultant, drafter of policy forms and endorsements, and instructor of insurance courses for members of the insurance industry. He has experience in each of the areas with respect to which he has expressed opinions, and his opinions are relevant under the law applicable to the merits of this case. His experience and expertise are summarized in his reports

[([ECF 47-1](#)) and ([ECF 47-2](#))], his Declaration ([ECF 47](#)), his Curriculum Vitae [([ECF 47-1](#)) at Ex. A], and his Supplemental Declaration, filed contemporaneously with this brief.

As the Supreme Court has recognized, expert testimony in non-scientific and non-technical areas may rely on personal knowledge or experience. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1998) ("In other [types of] cases, the relevant reliability concerns may focus upon personal knowledge or experience"). Thus, the federal courts regularly allow experiential experts to testify from their experience on topics directly related to their work. *See*, *e.g.*, *United States v. Griffith*, 118 F.3d 318, 321-22 (5th Cir. 1997) (holding that law officers may testify about the jargon or lingo of criminals based on their experience investigating such crimes); *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 601 (E.D. La. 1993) (admitting testimony about commercial lending practices based on experience in the field). In a recent decision, Judge Bell of the Western District of North Carolina denied a motion to exclude the expert testimony of a witness with thirty-five years of relevant experience who would testify about his conclusions on industry customs relating to good faith deposits. *See Noble Bottling, LLC v. Gora, LLC*, No. 3:20-cv-00363-KDB-DCK, 2023 U.S. Dist. LEXIS 775, at *11 (W.D.N.C. Jan. 4, 2023). Judge Bell also concluded that experience alone or experience in conjunction with other knowledge, skill, training or education may provide a sufficient foundation for expert testimony and noted that the text of Rule 702 expressly contemplates that an expert may be qualified on the basis of experience. *Id.* at *12, n.3. Mr. Tilden's report and CV set forth in detail his experience, the materials that he reviewed to form his opinions, and the basis for those opinions. That is sufficient to support his testimony.

In contrast, Crum's Motion to Exclude ignores controlling law on the merits, mischaracterizes both Mr. Tilden's expert testimony and the record, and relies on factual assertions

that are not material under controlling law.  Moreover, Crum cites a report by a purported expert who, unlike Mr. Tilden's decades of hands-on experience, has only administrative and political experience in South Carolina.  He has never actually served as an insurance agent, adjuster, broker, underwriter, or claims examiner.  [(ECF 53) p. 5 and (ECF 53-15) at Ex. 1 pp. 3-6, 22-24].

Plaintiffs incorporate by reference a detailed summary of the undisputed facts and discussion of the applicable law in their briefs on the pending cross-motions for summary judgment [(ECF 41) and (ECF 49)].  In addition to affirmatively showing the law supporting Plaintiffs' claims, those briefs distinguish the cases Crum mistakenly cites on the merits, including in its memorandum in support of its Motion to Exclude.  *See* Plaintiffs' Brief in Opposition to Crum's Motion for Summary Judgment ("Pls.' Br. in Opp'n to Crum's Mot. for Summ. J.") (ECF 41) pp. 13-26; Plaintiffs' Brief in Support of Motion for Summary Judgment ("Pls.' Br. in Supp. of Mot. for Summ. J.") (ECF 49) pp. 5-10.  Plaintiffs incorporate by reference the discussion in those briefs.

I.     **CONTRARY TO CRUM'S ARGUMENT, MR. TILDEN'S PROPOSED TESTIMONY IS RELEVANT TO THE MERITS OF THE CLAIMS AND DEFENSES.**

In attacking Mr. Tilden, Crum once again trots out its ill-conceived argument that it is irrelevant that Crum would have insured the Jones equipment for the same or a lower premium if the inadvertent misdescription of the brand name had not occurred.  *Compare* (ECF 53) pp. 7-10 (mistakenly arguing that Mr. Tilden's testimony should be excluded because it is irrelevant) *and* (ECF 26) pp. 1-3, 6-9 (unsuccessfully arguing that Crum should not have to respond to Plaintiffs' discovery because it is irrelevant what Crum would have done if the misdescription had not occurred) *to* (ECF 41) pp. 2-5, 9-10, 15, 18, 21 (Plaintiffs demonstrating that Crum's argument contending irrelevancy is wrong).  Magistrate Judge Numbers correctly rejected Crum's argument in granting Plaintiffs' Motion to Compel Crum to answer Plaintiffs' discovery on that issue.  *See*

3

(ECF 29) pp. 5-7 (holding that Crum's relevancy argument and discovery objections "hold no water").  Plaintiffs have shown in their briefs on the pending cross-motions for summary judgment, which discussions are incorporated herein by reference, that Crum's willingness to insure the Jones equipment for the same or a lower premium, regardless of brand name, is directly relevant to application of N.C. Gen. Stat. § 58-3-10 (providing that misdescriptions that are not material will not defeat recovery under the policy), *Metropolitan Property & Casualty Insurance Company v. Dillard*, 126 N.C. App. 795, 799, 487 S.E.2d 157, 159 (1997) ["*Metropolitan*"] (holding that a policyholder is entitled to reformation of the policy to cover the property owned by the policyholder rather than property not owned by the policyholder when, as here, the misdescription did not prejudice the carrier), and *Moreland v. State Farm Fire & Cas. Co.*, 662 S.W.2d 556, 563 (Mo. App. 1983) ["*Moreland*"] (cited with approval and followed by the North Carolina court in *Metropolitan* and holding that an insurance carrier's refusal to reform the policy to cover the property owned by the policyholder rather than property not owned by the policyholder was an improper attempt "to gain an unconscionable advantage[,]" **when, as here, the carrier would not have done anything different if the misdescription had not occurred)**. [Pls.' Br. in Supp. of Mot. for Summ. J. (ECF 49) pp. 3-4, 6-7; Pls.' Br. in Opp'n to Crum's Mot. for Summ. J. (ECF 41) pp. 2-4, 15, 18, 22].

Mr. Tilden's opinions that the record shows no reason to believe Crum would not have insured the Jones combine for the same or a lower premium if the misdescription had not occurred [Tilden Decl. (ECF 47) ¶ 6; (ECF 47-1) pp. 9-10, 15; (ECF 47-2) pp. 5-8], and that Crum would suffer no detriment from reforming the policy so that it covered Mr. Jones' combine and header as intended, are also directly relevant to the reasonableness and fairness of Crum's refusal, without good faith reason, to reform and honor the policy in accordance with the intent that it cover the

4

equipment which Mr. Jones actually owned or in which he had an insurable interest for purposes of Plaintiffs' Unfair and Deceptive Trade Practice claims.  *See* (ECF 49) pp. 3, 7-10.

**II.     MR. TILDEN CORRECTLY CONCLUDED THAT THE INADVERTENT MISDESCRIPTION OF THE BRAND NAME DID NOT AFFECT CRUM'S WILLINGNESS TO INSURE THE JONES EQUIPMENT.**

Plaintiffs engaged Mr. Tilden primarily because Crum initially refused to respond to Plaintiffs' discovery asking Crum to admit or deny that it would have insured the Jones equipment for the same or a lower premium if it had known that Mr. Jones' combine equipment was New Holland brand rather than AgCo brand.  [Crum's Resp. to Admis. Nos. 29-30, 33-34 (ECF 24-2); Crum's First Suppl. Resp. to Admis. Nos. 29-30, 33-34 (ECF 24-8); (ECF 25) pp. 2, 4-8; (ECF 41) p. 25; (ECF 49) p. 9].  Ironically, that point is now undisputed **due to evidence independent of Mr. Tilden's testimony** because: (i) the Court ordered Crum to respond to Plaintiffs' discovery requests on this issue [(ECF 29) pp. 8-9]; (ii) Plaintiffs obtained Crum's underwriting guidelines by subpoena to a third party [(ECF 43-4) and (ECF 47-3)]; and (iii) those sources reinforce Crum's quotes and other prior conduct that reflected its willingness to insure the Jones combine under either brand name.  *See* Pls.' Br. in Opp'n to Crum's Mot. for Summ. J. (ECF 41) pp. 2-5, 9-10, 15, 18, 25; Pls.' Br. in Supp. of Mot. for Summ. J. (ECF 49) pp. 4-7, 9; Crum's Suppl. Resp. to Admis. Nos. 29-30, 33-34 (ECF 43-2) (Crum's admission that it "likely" [*sic*] would have insured the Jones equipment for the same or a lower premium if it had been described as New Holland equipment); Crum's Suppl. Answers to Interrog. Nos. 8-9 (ECF 39-17) (failing to identify any factors that would have caused Crum not to insure the Jones equipment for the same or a lower premium if it had been correctly described as New Holland equipment).  Indeed, neither Crum's briefs on the cross-motions for summary judgment [(ECF 38), (ECF 55), and (ECF 57)] nor its brief on its Motion to Exclude (ECF 53) dispute the point.  In a critical and telling omission, the Declaration of Crum's Executive Underwriter, Lori Coughlin, submitted in support of Crum's

5

Motion for Summary Judgment, does not contend that identification of the correct brand name for the Jones equipment would have caused Crum to refuse to insure the equipment or would have caused Crum to charge a higher premium. [Coughlin Decl. (ECF 39-9) and (ECF 53-10)]. The Crum underwriter did not make any such contention in her Declaration because she could not honestly do so.

In his expert reports served before Crum's admissions under compulsion of Court order, Mr. Tilden correctly identified four factors supporting his opinion that there is no reason to believe that Crum would not have insured the Jones equipment for the same or a lower premium regardless of the brand name:

1. Crum charged the same premium rate ($1.40 per hundred of value) regardless of the equipment listed. [(ECF 47-1) p. 9; (ECF 47-2) p. 6; (ECF 47) ¶ 6].

2. Crum had agreed to insure the New Holland CR7090 combine in the original policy, as reflected in Endorsement No. 3, and there is nothing in the available facts to indicate that Crum would not have insured it in the renewal policy if correctly named. [(ECF 47-1) p. 9; (ECF 47-2) p. 8; (ECF 47) ¶ 6].

3. Nothing in the available facts show that Crum was prejudiced by the incorrect brand name, which in fact allowed Crum to collect a somewhat higher premium than if it had been identified correctly as the New Holland equipment. *Id.*

4. The only underwriting restriction reflected by record materials was that the schedule limit could be no more than $500,000, and the listed value of the New Holland equipment was less than that limit. [(ECF 47-1) p. 10].

As noted above, discovery responses received and documents produced after the close of discovery – and therefore produced after Mr. Tilden wrote his reports – confirm that Mr. Tilden

was correct.  In discovery responses ordered by the Court, Crum (i) admitted that it likely would have insured Mr. Jones' New Holland combine and header for the same or a lower premium if the correct brand name had been listed [Crum's Suppl. Resp. to Admis. Nos. 29-30, 33-34 (ECF 43-2)]; and (ii) failed in its interrogatory answers to identify any factors that would have caused it not to do so.  [Crum's Suppl. Answers to Interrog. Nos. 8-9 (ECF 39-17)].  In addition, although Crum failed to produce its own underwriting guidelines in discovery, Plaintiffs obtained Crum's guidelines from its broker, RT Specialty, and those guidelines reflect (i) that Crum did not distinguish between brands of equipment in its willingness to insure equipment; and (ii) that Crum charged the same premium rate (the $1.40 per hundred of value referenced and discussed by Mr. Tilden in his report) without making distinctions between brand names. [(ECF 43-4); Tilden Decl. (ECF 47) ¶¶ 6-7].  The fact that Crum would charge the same premium rate regardless of brand name means that it would have charged less (not more) if the New Holland brand had been correctly identified because the item values for that brand were slightly lower than for the AgCo equipment.  [Pls.' Br. in Opp'n to Crum's Mot. for Summ. J. (ECF 41) p. 8; Tilden Decl. (ECF 47) ¶ 6; (ECF 47-1) pp. 9, 15; (ECF 47-2) p. 8; Hancock Decl. (ECF 46) ¶ 7; Ashley Suppl. Decl. (ECF 44) ¶ 11].  Thus, the $1.40 rate would be multiplied by a slightly lower value, resulting in a lower premium.

Crum is wrong and addresses a moot point in criticizing Mr. Tilden's report for also remarking that a policy insures the policyholder and not the property – i.e., that the identity of the policyholder is important to the insurance carrier in the underwriting process.  [(ECF 53) pp. 4, 12].  As noted above, Mr. Tilden was undisputedly right in his ultimate conclusion (not disputed by Crum) that the difference in brand name would not have made a difference in Crum's willingness to insure the Jones combine equipment and would not have caused an increased

7

premium. Mr. Tilden's bottom line opinion is supported by Crum's quotes for both New Holland and AgCo combine equipment reflecting a willingness to insure such equipment under either brand name for the same premium rate, its actual insurance of the New Holland combine for the same premium rate, Crum's subsequent admission under court compulsion that it "likely" would have insured the New Holland equipment for the same or a lower premium, and Crum's inability (also under court compulsion) to identify any factors that would have caused it not to insure the New Holland equipment for the same or a lower premium. [Ashley Suppl. Decl. (ECF 44) ¶¶ 4-5 and Exs. A2 (ECF 44-2) and A6 (ECF 44-6); (ECF 39-7); Hancock Decl. (ECF 46) ¶ 7; Crum's Suppl. Resp. to Admis. Nos. 29-30, 33-34 (ECF 43-2); Crum's Suppl. Answers to Interrog. Nos. 8-9 (ECF 39-17)]. Accordingly, Crum's criticism of this subsidiary point is moot.

What is more, contrary to Crum's criticism, Mr. Tilden's opinion is right about the importance of the identity of the policyholder. The significance of the policyholder's identity to policy underwriting is recognized by the provision in Crum's own policy prohibiting assignment of the policy [(ECF 39-2) at p. 6 (identified as CF-00005)] and court decisions enforcing such provisions with respect to pre-loss assignments. *See*, *e.g.*, *Central Union Bank v. New York Underwriters' Ins. Co.*, 52 F.2d 823, 824 (4th Cir. 1931) ("Fire insurance contracts . . . are held not to be assignable because of the confidence reposed by the insurer in the owner of the property . . . [and] [t]hus, the owner may not sell the property and transfer the policy to the purchaser along with the title; for the insurer has not agreed to insure the property in the hands of the purchaser nor to assume the hazard involved in his ownership and possession."); *Public Util. Dist. No. 1 v. Int'l Ins. Co.*, 124 Wn.2d 789, 800, 881 P.2d 1020, 1027 (Wash. 1994) ("The purpose of a no-assignment clause in an insurance contract is to protect the insurer from increased liability [due to

a change in the insured's identity]"). In contrast, Crum's expert, who has never served as an underwriter, cites no authority to the contrary.

Mr. Jones was the policyholder to whom Crum issued quotes a few months earlier agreeing to insure his combine equipment, regardless of the brand name, at a premium rate of $1.40 per hundred dollars of value. Mr. Jones was the same policyholder who sought coverage for combine equipment for the renewal term, and Crum has not shown any change in his risk profile that would change the underwriting outcome.

## III.    MR. TILDEN DOES NOT IMPROPERLY INTERPRET POLICY PROVISIONS.

Contrary to Crum's contention, Mr. Tilden's reports and the statements in his Declaration and Supplemental Declaration do not improperly interpret policy provisions or invade the province of the Court in doing so. His reports and other statements, at most, refer to policy provisions as background without interpreting them.

For example, Crum complains that Mr. Tilden mentions that the Crum policy contains an actual cash value endorsement. [(ECF 53) pp. 5, 11]. His report, however, does not interpret that endorsement. Instead, he cites to the Crum policy to simply note this actual cash value provision and then speaks from his experience and expertise in explaining the concept of actual cash value as it is understood in the insurance industry. *See* (ECF 47-1) pp. 12-13. Further, Crum does not contend that Mr. Tilden is wrong and does not dispute that its policy provides coverage on an actual cash value basis.

The closest that Mr. Tilden comes to interpreting the policy is pointing out that the "loss payment" provision of the policy – which limits claims payments to the insured's financial interest in the covered equipment – means that Crum would never pay a claim on the AgCo equipment that Mr. Jones did not own or otherwise possess. [(ECF 47-1) pp. 11-13]. To the extent that Crum

9

deems this unobjectionable statement to be policy "interpretation," Crum is hypocritical because its own expert makes exactly the same point and **agrees with Mr. Tilden**.  [(ECF 53-15) at Ex. 1 ¶ 57].

In its final analysis, Crum does not point out any material respect in which Mr. Tilden purportedly **interprets the policy** in a way with which Crum disagrees.  That leaves the question of why Crum is taking the Court's time and imposing expense on Plaintiffs on this issue.

## IV.  CRUM MISREPRESENTS THE RECORD REGARDING THE REFUND OF PREMIUMS – WHICH IS IRRELEVANT IN ANY EVENT.

Although Crum admits that the partial refund of unearned premiums is not material, it tries to poison the well by misleadingly stating that Mr. Tilden was incorrect in concluding that no refund of the premiums was made to Mr. Jones after the misdescription was discovered.  [(ECF 53) pp. 4, 12-13].  Crum fails to tell the Court that Mr. Tilden actually concluded, after the relevant documents were later produced, that Crum made a short-rate refund of the unearned premium for the period after the policy was cancelled following the loss but **did not refund the premiums for the period that included the loss at issue**.  [(ECF 47) ¶ 6; (ECF 47-2) pp. 4-5].  As Plaintiffs have shown, Mr. Tilden's conclusion is directly supported by the uncontradicted documentary evidence, including the same documents to which Crum's lawyer referred in asserting that a premium refund was made.  *See* Pls.' Br. Opp'n to Crum's Mot. Summ. J. (ECF 41) pp. 11-12; Ashley Suppl. Decl. (ECF 44) ¶¶ 14-16 and Exs. A7 (ECF 44-7), A8 (ECF 44-8), A10 (ECF 44-10), and A11 (ECF 44-11); Crum's Statement of Material Facts (ECF 40), Ex. O (ECF 39-16).

The vague references to a refund in Crum's briefs and the Declaration of its underwriter [(ECF 38) pp. 6, 19; (ECF 53) pp. 12-13; (ECF 39-9) ¶ 14] do not – and cannot – dispute that the refund was only for the unexpired post-loss policy term and that Crum retained the premium for

the period that covered the loss.[1]  *See* (ECF 53-14); Ashley Suppl. Decl. (ECF 44) ¶¶ 14-17 and Exs. A7 (ECF 44-7), A8 (ECF 44-8), and A11 (ECF 44-11) .

What is more, Crum has admitted that the refund (in whatever amount) is not material or relevant to Plaintiffs' claims for reformation of (or recovery under) the policy.  *See* Crum's Reply Mem. in Supp. of Mot. for Summ. J. (ECF 55) p. 6.  Crum's admission is correct.  *Metropolitan* and N.C. Gen. Stat. § 58-3-10 require the carrier to allow the insured to recover under the policy, not to make a refund.  Crum's retention of the premium for the period covering the loss is, however, relevant for purposes of Plaintiffs' Unfair Trade Practice claims because it reinforces the unreasonableness of Crum's refusal to reform and honor the policy for which it had been paid when reformation would cause no prejudice to Crum and when Plaintiffs directed Crum's attention to *Metropolitan* which held that reformation was appropriate as a matter of law.

## V.    MR. TILDEN'S TESTIMONY ABOUT THE VALUE OF THE JONES EQUIPMENT IS ADMISSIBLE.

Crum complains about Mr. Tilden's opinion corroborating the testimony of Mr. Jones about the value of the equipment at the time of loss.  Mr. Jones, as the owner of the equipment, is competent to testify as to its value.  *See State v. Huggins*, 338 N.C. 494, 501, 450 S.E.2d 479, 483-84 (1994) (holding that the owner of personal property may properly testify to the value of that property); *Williams v. Hyatt Chrysler-Plymouth, Inc.*, 48 N.C. App. 308, 317, 269 S.E.2d 184, 190

---

[1] Although Crum's expert report does state that Crum "cancelled policy number BAK-56503-2 to the inception of the policy to allow TJF to get a full return of the premium" [(ECF 53-15) at Ex. 1 p. 14, ¶ 51] the report does not – and cannot – cite any evidence supporting that erroneous conclusion.  The uncontradicted documents are to the contrary. [Hancock Decl. Ex. H3 (ECF 46-3), Ex. H4 (ECF 46-4), Ex. H8 (ECF 46-8); Ashley Suppl. Decl. Ex. A8 (ECF 44-8)]. When counsel for Plaintiffs requested counsel for Crum to identify and produce any documents supporting any contention that the policy was cancelled from inception and that 100% of the premium was refunded, Crum's counsel identified only the request that the policy be cancelled **as of April 6, 2021,** which was not inception and which is after the loss. [Ashley Suppl. Decl. Ex. A8 (ECF 44-8)].

(1980) (holding that owner's non-expert opinion as to the value of his personal property was competent evidence). The record reflects that Mr. Jones had an ample basis for his opinion: (1) he knew what he had paid for the combine and header only nine months before they were destroyed in the barn fire; (2) he had shopped for the equipment just a few months before the fire; (3) he was familiar, as the owner, with the limited use of the equipment during the one growing season between the purchase in late May 2020 and the fire in March 2021; (4) he shopped for a replacement after the fire; and (5) he paid more for the replacement combine and header than he paid for the original New Holland equipment. [Jones Decl. (ECF 24-12) ¶¶ 8, 11, 24 and Ex. A; Jones Suppl. Decl. (ECF 45) ¶¶ 3-6].

In any event, Mr. Tilden could properly opine that the value of the New Holland equipment for insurance purposes had not changed significantly from the price paid by Mr. Jones just a few months earlier, given its limited use in the short time between the purchase in late May or early June 2020 and the fire loss in March 2021 (only one harvest), as well as economic conditions. "[A] non-expert witness who has knowledge of value gained from experience, information, and observation may give his opinion of the value of personal property." *Williams*, 48 N.C. App. at 317, 269 S.E.2d at 190, *disc. review denied*, 273 S.E.2d 451 (1980).

Mr. Tilden has ample knowledge relevant to equipment valuation for insurance purposes gained from his forty-eight years of experience in the insurance industry because that experience included (among other things) his work as a claims examiner, work with insurance companies with respect to property loss adjustment, teaching insurance courses to members of the insurance industry (including courses relating to the adjustment of claims), serving on the committee that developed the current content outline for licensure as an insurance agent or adjuster (which included requiring candidates to have knowledge of property loss valuation), drafting questions

12

for the licensing exams, and writing a resource for use in the insurance valuation course that he teaches entitled "Insurance Valuation Problems."  *See* (ECF 47-1) at Ex. A pp. 1-2, 5.

Mr. Tilden's opinion applying his knowledge was based on a simple, common-sense approach starting with the purchase price actually paid by Mr. Jones for the equipment a few months before the loss, the engine and threshing hours on the equipment, and the fact that Mr. Jones used the New Holland equipment for only one harvest season.  *See* (ECF 47-1) pp. 12-13. Mr. Tilden then applied straight line depreciation based on the anticipated life of the equipment, taking into account the publicly known upward pressure on prices due to pandemic conditions at the time of, and prior to, the loss.[2]  *See* (ECF 47-1) pp. 12-13.

Significantly, Crum has not submitted any evidence disputing the accuracy of the opinions by Mr. Jones and Mr. Tilden or reflecting that the actual purchase price of the equipment in the recent past cannot be used to establish value.

## VI.   MINOR DISAGREEMENTS BETWEEN MR. TILDEN AND CRUM'S LESS QUALIFIED EXPERT ARE NOT GROUNDS FOR EXCLUDING MR. TILDEN'S TESTIMONY.

Crum argues that Mr. Tilden's conclusions are not admissible because Crum's less qualified expert allegedly disagrees with Mr. Tilden.  [Crum Br. in Supp. of Mot. to Exclude (ECF 53) p. 5]. As discussed below, the disagreement is (like Crum's coverage) largely illusory. Nevertheless, the fact that two experts disagree is not grounds for exclusion of one of the experts.

---

[2] Although Mr. Tilden's report was based on his own personal knowledge and experience in the insurance business [(ECF 47-1); Tilden Decl. (ECF 47); Tilden Suppl. Decl., filed contemporaneously with this brief], a quick Google search yields government statistics consistent with his opinion.  *See*, *e.g*., U.S. Bureau of Labor Statistics, Producer Price Index by Industry: Farm Machinery and Equipment Manufacturing: Parts for Farm Machinery, for Sale Separately [PCU333111333111C], retrieved from FRED, Federal Reserve Bank of St. Louis, https://fred.stlouisfed.org/series/PCU333111333111C, March 15, 2023 (showing dramatic increase in farm equipment prices in 2021).

It is simply up to the trier-of-fact to conclude what they believe. What is more, there is no meaningful conflict between Crum's purported expert and Mr. Tilden.

As shown above, Crum's reliance on the disagreement by its expert as to whether the identity of the insured is important in underwriting (*Id.*) is moot because Mr. Tilden's discussion on this point was only one non-exclusive factor supporting Mr. Tilden's unchallenged conclusion that Crum would have insured the Jones equipment for the same or a lower premium if the brand name misdescription had not occurred. Crum's contention is also wrong because Crum's expert is unaware of, or fails to acknowledge, the factors and authorities discussed at pages 7-9 above. Crum's expert does not – and cannot – dispute Mr. Tilden's ultimate conclusion that the inadvertent misdescription did not cause Crum to insure equipment that it would not have insured, or to forebear collection of any premiums that it would have collected.

As also shown above, Crum's reliance on its purported expert in contending that Mr. Tilden erred in referring to the loss payment provision [Crum Br. in Supp. of Mot. to Exclude (ECF 53) p. 5] ignores the fact that Crum's own expert refers to the same policy provision and reaches the same conclusion as Mr. Tilden – that the policy would never have paid a claim on AgCo equipment which Mr. Jones did not own or in which Mr. Jones had no insurable interest. *See* pages 9-10 above and (ECF 53-15) at Ex. 1 ¶ 57 (stating that "[i]f [Mr. Jones] indeed had no financial interest in the equipment covered, then the payment would be zero").

Finally, Crum relies on its own misconception of applicable North Carolina law in contending that its expert shows that Mr. Tilden erred in not addressing the alleged negligence of Mr. Jones and his agent, IOC. *See* Crum's Br. in Supp. of Mot. to Exclude (ECF 53) pp. 5, 14. Plaintiffs did not ask Mr. Tilden to opine on the alleged negligence because that negligence, if

14

established, would not be relevant under controlling North Carolina law. *See Metropolitan*, 126 N.C. App. at 798, 487 S.E.2d at 159:

> "Negligence on the part of one party [which induces the mistake] does not preclude a finding of mutual mistake." *Moreland v. State Farm Fire & Casualty Co.*, 662 S.W.2d 556, 563 (Mo. App. 1983) (allowing reformation for insurance contract for fire damage despite incorrect land description supplied by insured). In other words, the fact that the mistake arises because the party who is seeking the reformation supplied the incorrect information does not make the mistake unilateral. *Id.*

Crum and its expert also ignore that N.C. Gen. Stat. § 58-3-10, providing that a non-material misdescription will not defeat coverage under the policy, contains no exception for the negligence of the policyholder or his agent.

## CONCLUSION

For the reasons set forth herein, Crum's Motion to Exclude should be denied.

## CERTIFICATION OF COMPLIANCE

The undersigned attorney hereby certifies that this Brief is in compliance with Local Rule 7.2(f)(3), and that the body of the Brief, including footnotes and citations, but excluding covers, captions, signature lines, certificates of service, and certificates of compliance with this Rule, contains 4,782 words as indicated by Microsoft Word, the program used to prepare this Brief.

This the 16th day of March, 2023.

        /s/ Michael T. Medford     .
Michael T. Medford, N.C. State Bar #7227
Brianne M. Glass, N.C. State Bar #56491
MANNING, FULTON & SKINNER, P.A.
 *Attorneys for Lawver Insurance and Financial Services d/b/a Insurance of the Carolinas*
3605 Glenwood Avenue - Suite 500
Post Office Box 20389
Raleigh, North Carolina 27619
Telephone:    (919) 787-8880
Facsimile:    (919) 325-4600
E-mail:    medford@manningfulton.com
        glass@manningfulton.com

_/s/ Spencer T. Wiles_____

R. Steven DeGeorge, N.C. State Bar # 20723
Spencer T. Wiles, N.C. State Bar # 53664
ROBINSON BRADSHAW & HINSON, P.A.
  *Attorneys for Plaintiff Adam Jones*
  *d/b/a Triple J Farms*
101 North Tryon Street, Suite 1900
Charlotte, NC 28246
Telephone:      (704) 377-8374
Facsimile:      (704) 373-3974
E-mail:         sdegeorge@rbh.com
                swiles@robinsonbradshaw.com

3860432/L53018

# CERTIFICATE OF SERVICE

This is to certify that a copy of ***Plaintiffs' Brief in Opposition to Defendant's Motion to Exclude Testimony of R. Bryan Tilden*** has this date been electronically filed with the Clerk of Court using the CM/ECF system, which generates a notice of electronic filing constituting service hereof, to the following counsel of record:

Adam L. Ross
Alexandra B. Bachman
JAMES, McELROY & DIEHL, P.A.
525 North Tryon Street, Suite 700
Charlotte, NC 28202
Email: aross@jmdlaw.com
        abachman@jmdlaw.com

Frank M. Falcone (*pro hac vice*)
Kristin V. Gallagher (*pro hac vice*)
Martin Harms (*pro hac vice*)
KENNEDYS CMK LLP
120 Mountain View Boulevard
Basking Ridge, NJ 07920
Email: frank.falcone@kennedyslaw.com
        kristin.gallagher@kennedyslaw.com
        martin.harms@kennedyslaw.com

*Attorneys for Defendant Crum & Forster
Specialty Insurance Company*

This 16th day of March, 2023.

        /s/ Michael T. Medford       .
Michael T. Medford, N.C. State Bar #7227
Brianne M. Glass, N.C. State Bar #56491
MANNING, FULTON & SKINNER, P.A.
*Attorneys for Lawyer Insurance and Financial
Services d/b/a Insurance of the Carolinas*
3605 Glenwood Avenue - Suite 500
Post Office Box 20389
Raleigh, NC 27619
Telephone:    (919) 787-8880
Facsimile:    (919) 325-4600
E-mail:    medford@manningfulton.com
        glass@manningfulton.com