# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## SOUTHERN DIVISION
## CIVIL ACTION NO.: 7:22-CV-00025-FL

| | |
|---|---|
| **ADAM JONES d/b/a TRIPLE J FARMS, and LAWVER INSURANCE & FINANCIAL SERVICES d/b/a INSURANCE OF THE CAROLINAS,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CRUM & FORSTER SPECIALTY INSURANCE COMPANY,**<br><br>**Defendant.** | **DEFENDANT CRUM & FORSTER SPECIALTY INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF R. BRYAN TILDEN** |

Defendant Crum & Forster Specialty Insurance Company ("Crum & Forster") files this Reply Memorandum in Support of its Motion to Exclude the Testimony of R. Bryan Tilden, and states as follows:

## INTRODUCTION

The parties have now briefed the issues in this case on numerous occasions. Crum & Forster has argued, in each of its briefs, that the issues on which Mr. Tilden opines, i.e., prejudice, premium, and degree of risk, are not relevant to the claim for reformation asserted by Plaintiffs Lawver Insurance & Financial Services d/b/a Insurance of the Carolinas ("IOC") and Adam Jones d/b/a Triple J Farms ("TJF"). Plaintiffs have not been able to identify, in any of their briefs, a single case discussing these issues in the context of a claim for reformation. Because Mr. Tilden opines on irrelevant issues, his testimony must be excluded.

Further, despite now issuing four "expert" reports, Mr. Tilden has been unable to shore up his completely unsupported opinions, or address IOC's admitted negligence. As such, Mr. Tilden's testimony should also be excluded as without basis in the facts of this case.

1

# LEGAL ARGUMENT

## I. Mr. Tilden's Opinions are Irrelevant.

It is well settled that expert testimony on irrelevant matters is subject to exclusion. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 281 (4th Cir. 2021); *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017). Because IOC has continually failed to identify any authorities holding the issues of prejudice, premium, and degree of risk are relevant to the remedy of reformation, Mr. Tilden's opinions must be excluded.

IOC relies on the same authorities it has continuously cited throughout this case in support of its misguided claim that the issues discussed by Mr. Tilden are somehow relevant to reformation. Crum & Forster has already demonstrated the inapplicability of the authorities cited by IOC on numerous occasions. (*See* ECF 55, 57). IOC's rote recitation of these materials fails to address the actual facts and substance of the cited authorities.

IOC first relies upon N.C. Gen. Stat. § 58-3-10. However, IOC has not identified, and Crum & Forster has not been able to locate, a single case citing this statute in the context of a claim for reformation. In point of fact, the principal case relied upon by IOC, *Metro. Prop. & Cas. Ins. Co. v. Dillard*, 126 N.C. App. 795, 487 S.E.2d 157 (1997), establishes the inapplicability of this statute to claims for reformation. *Dillard* involved a claim for reformation by the insured, and a claim for rescission by the insurance carrier. *Cf. Dillard*, 126 N.C. App. at 797-98, 487 S.E.2d at 158-59; *Dillard*, 126 N.C. App. 798-99, 487 S.E.2d at 159-60. The *Dillard* court did not discuss N.C. Gen. Stat. § 58-3-10, at all, in its discussion of reformation. It only turned to the statute when discussing the remedy of rescission. *See Dillard*, 126 N.C. App. 798-99, 487 S.E.2d at 159-60. IOC's continued reliance on N.C. Gen. Stat. § 58-3-10 is nothing more than willful ignorance of the standard governing its claim for reformation.

IOC then cites *Dillard* for the proposition that reformation is available where "the misdescription did not prejudice the carrier." (ECF 59, p. 4). Yet, the word "prejudice" does not appear at any point in the opinion in *Dillard*. *Dillard* was not decided on principles of "prejudice." The reformation decision in *Dillard* was entirely focused on the clear, cogent and convincing evidence produced by the insured in support of its claim for reformation. This evidence included "the policy itself, which contained a detailed description of the [correct] property, despite the incorrect street number." *Dillard*, 126 N.C. App. at 799, 487 S.E.2d at 159. Again, IOC makes no attempt to engage with the facts or actual holding in *Dillard*.

IOC's attempt to use the November 18, 2022 Opinion (ECF 29) to rewrite the legal standard for reformation should also be disregarded. It is respectfully submitted that the Court may have conflated the equitable remedy of reformation (modification of a contract) with rescission (cancelling of a contract) in its November 18, 2022 Opinion. (ECF 29). As Crum & Forster argued in connection with its Motion for Summary Judgment, and in a subsequent motion granted by Magistrate Judge Numbers (*See* ECF 30, 35), reformation and rescission are entirely different legal remedies. In order to prove that a contract should be modified, as requested by the Plaintiffs in this case, the moving party must prove by clear, cogent and convincing evidence that the written instrument does not express the parties' intention respecting a material fact (in this case, the property to be insured). *See Branch Banking & Trust Co. v. Chicago Title Ins. Co.*, 214 N.C. App. 459, 465, 714 S.E.2d 514, 518 (2011). On the other hand, rescission, which is not being sought by any party in this case, is the equitable remedy of voiding a contract if it was procured by material misrepresentation or a fraudulent statement. *See, e.g., Tharrington v. Sturdivant Life Ins. Co.*, 115 NC. App. 123, 127, 443 S.E.2d 797, 800 (1994).

Contrary to IOC's claims, *Tharrington* did not involve a claim for reformation, or discuss

3

the remedy. Instead, in *Tharrington*, an insurer sought to rescind a policy based on the insured's misrepresentation that she "had not, within the preceding twelve months, been consulted or treated for certain enumerated health conditions." *Tharrington*, 115 N.C. App. at 124, 443 S.E.2d at 798. The court held this misrepresentation was material, and voided the policy. *Id.* at 125-28, 443 S.E.2d at 799-800. The *Tharrington* decision is completely inapplicable here. No party is looking to "void" the Policy. (*See also* ECF 29 at p. 6 "courts next consider whether the misrepresentation caused by the mistake is material. If so, the contract is voidable [.]") Instead, IOC seeks to reform the Policy after the fact to cover up for its mistake. In cases addressing reformation, premium and degree of risk are not discussed. *E.g., Dillard*, 126 N.C. App. at 797-98, 487 S.E.2d at 158-59.

The final authority relied upon by IOC is *Moreland v. State Farm Fire & Cas. Co.*, 662 S.W.2d 556 (Mo. Ct. App. 1983). *Moreland* is a Missouri case. It does not cite or interpret North Carolina law and is of no effect here. But, even setting aside these facts, *Moreland* does not support IOC's misguided argument. *Moreland* was not decided because of prejudice, degree of risk or the premium charged. The reformation decision in *Moreland* was based on the indisputable evidence of mutual mistake produced in the case. This evidence included the fact that the insurer's agent had met the insured at the insured property, had inspected the insured property, had photographed the insured property, and had noted the insured property's "dimensions, its partial second story, and the fact that it had been remodeled and had new carpet." *Id.* at 561. Similar to *Dillard*, *Moreland* was decided because the insured had produced clear, cogent and convincing evidence of mutual mistake. The factors discussed in Mr. Tilden's report played no role.

At bottom, IOC has now had multiple opportunities to identify authorities supporting the

applicability of Mr. Tilden's opinions to its claim for reformation.[1] It has failed to do so. What matters in a reformation case is whether there is clear, cogent and convincing evidence, that *both* parties agreed upon a material term to be included in the written instrument, that the term was omitted by the parties' mutual mistake, and because of that mutual mistake, the written instrument does not express the parties' intention. *See Hice v. Hi-Mil, Inc.*, 301 N.C. 647, 650-51, 273 S.E.2d 268, 270 (1981); see also *Branch Banking & Trust Co. v. Chicago Title Ins. Co.*, 214 N.C. App. 459, 463-64, 714 S.E.2d 514, 518 (2011).

IOC ignores this standard entirely, and purposefully seeks to confuse by presenting Mr. Tilden's irrelevant opinions regarding prejudice, premium, and degree of risk. Because Mr. Tilden's opinions are not relevant to the issues in this case, they will only serve to confuse the finder of fact, and must be excluded.

## II. Mr. Tilden's Opinions are Without Basis.

Mr. Tilden has now issued four "expert" reports in this matter. Two were served in the course of discovery. Mr. Tilden's last two reports, styled as Mr. Tilden's "Declaration" and "Supplemental Declaration," were improperly filed after the close of discovery in futile attempts to shore up IOC's claims in the face of motions brought by Crum & Forster. These after the fact amendments to Mr. Tilden's opinions are improper as a matter of law. *E.g.*, *S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 596 (4th Cir. 2003). Perhaps more important, however, is the fact that Mr. Tilden has completely failed to provide a basis for his opinions despite

---

[1] IOC actually admits that Mr. Tilden has provided an opinion on an irrelevant issue with respect to the refund of premium. (Plaintiffs' Brief, p. 10). In any event, there is no evidence that Crum & Forster acted "unreasonable." Crum & Forster transferred the premium back to the broker, RT Specialty, on April 21, 2021. Crum & Forster was later informed that Mr. Jones could not receive the premium since it was paid by an outside vendor and Mr. Jones defaulted on payment to that vendor.

these numerous amendments.

For instance, Mr. Tilden provides the bizarre opinion that property insurance covers "people, not property." IOC has attempted to support this opinion by citing cases from Washington State, and from 1931, which address a policy provision completely irrelevant to the parties' dispute. (ECF 59, p. 8). Neither Mr. Tilden nor IOC have identified how this opinion can be supported when Crum & Forster's guidelines expressly provide that property must be "scheduled" in order for it to be covered. (ECF 43, Exhibit 4). Further, Mr. Tilden describes himself as a "property" insurance agent. (ECF 53, Exhibit K at ex. A, p. 2). This opinion is not a "moot point" as IOC suggests; it is indicative of Mr. Tilden's efforts to confuse through baseless and irrelevant opinions.

IOC devotes significant attention to Mr. Tilden's experience,[2] but nowhere in Mr. Tilden's *curriculum vitae* is there any experience which would allow Mr. Tilden to opine as to the value of farming equipment, as well as the effect of depreciation and "cost-push inflation" on the value of farming equipment. IOC argues that Mr. Tilden's opinions on these matters are admissible nonetheless, because "a non-expert witness who has knowledge of value gained from experience, information, and observation may give his opinion of the value of personal property." *Williams v. Hyatt Chrysler-Plymouth, Inc.*, 48 N.C. App. 308, 317, 269 S.E.2d 184, 190 (1980). Yet, Mr. Tilden is not being offered as a "non-expert witness." IOC claims he is an expert, with specialized experience which enables him to provide his opinions. IOC cannot use this "expert" designation to bolster a damages claim that would otherwise be based on nothing more than conjecture.

Finally, the most glaring omission in Mr. Tilden's reports is his complete failure to address

---

[2] IOC also makes an attempt to criticize the qualifications of Crum & Forster's expert. These attempts should be disregarded. IOC did not timely move to exclude the testimony from Crum & Forster's expert, and its attempts to criticize him now are nothing more than a distraction.

IOC's negligence. IOC argues that reformation is available, despite its admitted negligence. (ECF 59, p. 15). This argument misstates the law; reformation is not a remedy for broker malpractice. Instead, North Carolina law holds that "[n]egligence on the part of one party which induces the mistake does not preclude a finding of mutual mistake." *Dillard*, 126 N.C. App. at 798, 487 S.E.2d at 159 (emphasis added). *See also Wells Fargo Bank, N.A. v. Coleman*, 239 N.C. App. 239, 248-49, 768 S.E.2d 604, 611 (2015). IOC's negligence here did not "induce" a mistake. IOC submitted the wrong equipment for coverage by manufacturer, model number, year, serial number, and value. IOC alone was negligent, and Crum & Forster only intended to insure that equipment that was described, in detail, in the Policy.

IOC's negligence is absolute and incontrovertible. This Court has already held that:

- The 2020-2021 application submitted by IOC on behalf of Jones only listed AgCo equipment.

- IOC did not submit a 2020-2021 policy application on Jones's behalf to C&F requesting coverage for New Holland equipment.

- IOC did not alert C&F or its broker that the 2020-2021 application and resulting policy contained the wrong name or serial number of the equipment to be insured until after the equipment was destroyed.

(Exhibit O).

In other words, the root cause of the parties' dispute is IOC's admitted negligence. Yet, Mr. Tilden provides his opinions without even attempting to address this issue. Expert opinion cannot rest on a reliable foundation when it fails to address the cause of the damages alleged in a litigation. *E.g., Cooper v. Smith & Nephew*, 259 F.3d 194, 201-03 (4th Cir. 2001) (reasoning that expert's failure to address defendant's competing causation theories underscored the unreliability of expert's opinion).

Simply put, Mr. Tilden's opinions are consistent with IOC's tactics throughout this

litigation – willful ignorance of IOC's own malpractice, while attempting to point the finger at Crum & Forster to cover up for IOC's blatant failures. These tactics have run their course. Because Mr. Tilden fails to engage with the fact that IOC's errors directly caused TJF's loss, his opinions are without basis, and must be excluded.

**CONCLUSION**

For the foregoing reasons, and those in Crum & Forster's moving papers, it is respectfully submitted that this Court should grant Crum & Forster Specialty Insurance Company's Motion to Exclude the Testimony of R. Bryan Tilden.

## CERTIFICATION OF LENGTH AND FORMAT

The undersigned counsel certifies that this Motion is in compliance with L.R. 7.2(f)(2) and does not exceed ten (10) pages in length.

This the 30th day of March, 2023

**JAMES, McELROY & DIEHL, P.A.**

By: /s/ Alexandra B. Bachman
Adam L. Ross, NC State Bar No. 31766
Alexandra B. Bachman, NC State Bar No. 54746
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 348-0800
Email: aross@jmdlaw.com
        abachman@jmdlaw.com

Kristin V. Gallagher (*pro hac vice*)
kristin.gallagher@kennedyslaw.com
Frank M. Falcone (*pro hac vice*)
frank.falcone@kennedyslaw.com
Kennedys CMK LLP
120 Mountain View Boulevard
Basking Ridge, NJ 07920
Tel: (908) 848-1220

*Counsel for Defendant*
*Crum & Forster Specialty Insurance Company*

9

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF R. BRYAN TILDEN** has this date been electronically filed with the Clerk of Court using the CM/ECF system, which generates a notice of electronic filing constituting service hereof, to the following counsel of record:

| | |
|---|---|
| Michael T. Medford | R. Steven DeGeorge |
| Manning, Fulton & Skinner, P.A. | Spencer T. Wiles |
| 3605 Glenwood Avenue, Suite 500 | Robinson Bradshaw & Hinson, P.A. |
| P.O. Box 20389 | 101 North Tryon Street, Suite 1900 |
| Raleigh, NC 20389 | Charlotte, NC 28246 |
| Fax: 919-325-4618 | Fax: 919-328-8790 |
| Email: medford@manningfulton.com | Email: sdegeorge@robinsonbradshaw.com |
| *Attorneys for Lawyer Insurance and Financial* | swiles@robinsonbradshaw.com |
| *Services d/b/a Insurance of the Carolinas* | *Attorneys for Adam Jones d/b/a Triple J Farms* |

This the 30th day of March, 2023

**JAMES, McELROY & DIEHL, P.A.**

By: /s/ Alexandra B. Bachman
Adam L. Ross
Alexandra B. Bachman
525 N. Tryon Street, Suite 700
Charlotte, North Carolina 28202
Telephone: (704) 372-9870
Facsimile: (704) 348-0800
Email: aross@jmdlaw.com
abachman@jmdlaw.com

Kristin V. Gallagher (*pro hac vice*)
kristin.gallagher@kennedyslaw.com
Frank M. Falcone (*pro hac vice*)
Frank.falcone@kennedyslaw.com
Kennedys CMK LLP
120 Mountain View Boulevard
Basking Ridge, NJ 07920
Tel: (908) 848-1220

*Counsel for Defendant*
*Crum & Forster Specialty Insurance Company*

10