IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:22-CV-025-FL

| | | |
|---|---|---|
| ADAM JONES d/b/a/ Triple J Farms, and LAWVER INSURANCE & FINANCIAL SERVICES, d/b/a/ Insurance of the Carolinas, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) | |
| CRUM & FORSTER SPECIALTY INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) | |

This matter comes before the court on the parties' cross-motions for summary judgment, (DE 37, 48) and defendant's motion to exclude the testimony of R. Bryan Tilden ("Tilden"). (DE 52). The issues raised are ripe for ruling. For the following reasons, plaintiffs' motion for summary judgment is granted in part and denied in part, defendant's motion for summary judgment is granted in part and denied in part, and defendant's motion to exclude the testimony of Tilden is granted.

## STATEMENT OF THE CASE

Plaintiffs commenced this action in contract by complaint filed December 9, 2021, in the Superior Court of Robeson County, asserting claims for reformation of an insurance policy, breach of contract, and unfair trade practices in violation of N.C.G.S. §§ 58-63-1, 57-1.1, and 75-16, and seeking an order reforming the policy, judgment for amounts due under the policy, and treble

damages under N.C Gen. Stat. §§ 25-1.1 and 75-16. Defendant removed to this court February 10, 2022, on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332(a) and 1441(b).

Defendant filed answer and counterclaim March 10, 2022, seeking a judicial declaration that it has no obligation to pay plaintiff Adam Jones's ("Jones") claim, attorneys' fees, and costs. Plaintiffs filed answer to defendant's counterclaim March 31, 2022. The court entered a case management order April 8, 2022. Plaintiffs filed motion to compel October 11, 2022, which after being fully briefed was referred to and decided by Magistrate Judge Robert T. Numbers, II. Defendant filed motion to compel November 21, 2022, which also was decided by the magistrate judge.

Defendant filed its instant motion for summary judgment January 26, 2023, with reliance upon 1) declarations by Frank M. Falcone ("Falcone"), its attorney; and Lori Couglin, its employee, 2) a table summarizing its exhibits, 3) a policy issued to plaintiff Jones effective from November 13, 2020, to November 13, 2021, 4) a policy issued to plaintiff Jones effective from November 13, 2019, to November 13, 2020, 5) emails between employees of plaintiff Lawver Insurance & Financial Services, d/b/a/ Insurance of the Carolinas ("IOC") and employees of non-party Ryan Turner Specialty ("RTS"), 6) an insurance application submitted by plaintiff IOC and attachments thereto, 7) correspondence between the parties, 8) response to defendant's requests for admissions by plaintiff IOC and related correspondence between the parties, 9) a property loss notice submitted by plaintiff IOC on behalf of plaintiff Jones, 10) this court's order entered January 23, 2023, order granting in part and denying in part defendant's motion to compel, 11) a letter from defendant to plaintiff Jones declining coverage, 12) notice of cancellation of insurance policy and 13) defendant's responses to plaintiffs' supplemental interrogatories.

Plaintiffs responded in opposition, relying upon some of the same materials in addition to 1) defendant's supplemental response to certain of plaintiffs' requests for admission, 2) a renewal quote by non-party RTS, 3) portions of the record in a North Carolina Court of Appeals case relied upon for plaintiffs' legal arguments, 4) declarations of Libby Ashley and Alysia Hancock, employees of plaintiff IOC, 5) email correspondence between employees of plaintiff IOC and non-part RTS, 6) changes to plaintiff Jones's insurance policy dated June 5, 2020, and April 6, 2021, 6) email correspondence between counsel regarding cancellation of insurance, 7) various internet articles, 8) policy declarations signed November 25, 2020, 9) a check from non-party RTS to plaintiff IOC in the amount of $1,528.31, 9) a declaration by plaintiff Jones, 10) an invoice from A1 Custom Harvesting, 11) declaration and expert reports by Tilden, an expert witness for the plaintiffs, and 13) a subpoena to non-party RTS. Defendant replied March 2, 2023.

Plaintiffs moved for summary judgment February 23, 2023, relying upon 1) a declaration by Michael T. Medford, counsel for plaintiff IOC, and 2) correspondence between counsel for the parties. Defendant responded in opposition March 15, 2023, and plaintiffs replied March 29, 2023, relying upon a second supplemental declaration of plaintiff Jones.

Defendant moved to exclude the testimony of Tilden February 23, 2023, relying on some of the same materials described above and on 1) an additional declaration by Falcone, 2) policy changes dated November 13, 2019, May 12, 2020, June 5, 2020, and two changes dated June 8, 2020, 3) email correspondence between employees of plaintiff IOC, non-party RTS, and defendant, 4) a designation and disclosure of expert witness by plaintiffs, and 5) a designation and disclosure of expert witness Ernest N. Csiszar and associated expert reports. Plaintiffs responded in opposition March 16, 2023, relying upon some materials previously described and a supplemental declaration of Tilden. Defendant replied March 30, 2023.

Plaintiffs moved to correct the record April 4, 2023, stating that the declaration by plaintiff Jones submitted previously to the court was in fact an excerpt of a lengthier declaration that had been sent to counsel for the defendant, relying upon some materials discussed above in addition to 1) a declaration by Barbara A. Barat, paralegal with the law firm representing plaintiff IOC and 2) additional correspondence between counsel for the parties.  Defendant did not respond, and the court granted the motion.

## STATEMENT OF UNDISPUTED FACTS

The undisputed facts may be summarized as follows.  Plaintiff Jones, a farmer, purchased an insurance policy from defendant through his insurance agent, plaintiff Insurance of the Carolinas ("IOC"), with RTS handling the policy application process for defendant in its capacity as an insurance broker.  (Plf. Stmt. (DE 50) ¶¶ 1-2).  Plaintiff Jones acquired, through his agent plaintiff IOC, a commercial inland marine policy effective beginning November 13, 2019, and providing coverage for a 2014 Case Magnum tractor with serial number ZERD03302 and a limit of insurance of $130,000.00 ("the Case Magnum tractor").  (Def. Smt. (DE 40) ¶ 3); (DE 39-3 at 11).  The record shows six changes to that policy.  On November 13, 2019, plaintiff Jones's address was changed (DE 39-3 at 25).  On May 12, 2020, a "tractor" manufactured by New Holland, model C245, serial number JAFC245PKM4772, year 2020, and valued at $81,000.00 ("the 2020 New Holland tractor") was added to the policy.  (Id. at 26).  On June 5, 2020, a "tractor" manufactured by New Holland, model CR7090, serial number YDG116796, year 2013, and valued at $150,000.00 ("the 2013 New Holland tractor") was added (hereinafter, collectively, "plaintiff Jones's equipment").  On June 8, 2020, the 2020 New Holland tractor was again added to and then deleted from the policy, and the 2020 New Holland tractor added May 12, 2020, was deleted.  (Id. at 30-34).  The Case Magnum tractor remained on the policy.  (See id.).

4

On November 18, 2020, Libby Ashley ("Ashley"), an IOC employee, asked RTS to "process combine insurance renewal." (DE 39-4 at 2). Plaintiff IOC also sent to defendant an application describing the property to be insured as a combine with value of $280,000.00 without specifying the manufacturer, model, year, or serial number. (Def. Smt. (DE 40) ¶ 5); (DE 39-5 at 4). An employee of RTS, Haleigh Omohundro ("Omohundro"), responded to Ashley requesting this information. (Def. Smt. (DE 40) ¶ 6); (DE 39-5 at 4). Ashley emailed Omohundro an application listing 1) a combine valued at $180,000.00, model Super 27, year 2013, serial number RS7700DHT17177 and "AgCo Gleaner" listed in the "manufacturer" field, and 2) a header valued at $30,000.00, model 9250T-30, year 2013, and "AgCo Gleaner" again listed in the "manufacturer" field. (Def. Smt. (DE 40) ¶ 6)); (DE 39-6 at 4). The accompanying email stated that Ashley's original request mistakenly had listed the value of plaintiff Jones's equipment at $280,000.00 "when in fact the items [were] valued at $210,000.00." (DE 39-6). Defendant issued a policy countersigned November 25, 2020, and effective from November 13, 2020, to November 13, 2021, covering property "described in the declaration[]," (DE 39-2 at 15), as a "Combine/RS7700DH17177/2013/AgCo Gleaner" and "Header/92500CHD01576/2013/AgCo Cleaner [sic]." (Def. Smt. (DE 40) ¶ 3) (DE 39-2 at 11). Plaintiff IOC has no record of sending the policy to plaintiff Jones. (Def Smt. (DE 40) ¶ 11).

In March of 2021, plaintiff IOC submitted a "property loss notice" to defendant stating: "Barn caught fir[e] and Combine and Header burned up in fire." (DE 39-11 at 2). In May of that year, Ashley contacted two RTS employees to inform them that "the wrong combine [was] listed on the policy" and that the policy listed an "incorrect header," stating that the header actually destroyed was "a 2008 New Holland Combine Header [with] serial [number] PNL023161 value[d] at $14,500.00." (DE 39-13 at 6). RTS responded that it "issued the policy to match the

applications" plaintiff IOC submitted. (DE 39-8 at 3). Soon thereafter, defendant sent a letter to plaintiff Jones indicating that it would "respectfully deny coverage for [his] claim," (DE 39-15), explaining that "[t]he involved equipment was not scheduled on the policy and was acquired more than 60 days prior to the loss date." (Id. at 4). This suit followed.

## COURT'S DISCUSSION

A.    Cross Motions for Summary Judgment

1.    Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).[1]

Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).

"[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue

---

[1]    Throughout this order, internal quotation marks and citations are omitted unless otherwise specified.

for trial." Id. at 249.  In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982).  Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture."  Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005).  By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied.  Id. at 489-90.

2.    Analysis

a.    Standing of plaintiff IOC

As a preliminary matter, the court addresses defendant's argument that plaintiff IOC does not have standing to bring a claim for reformation.  Article III of the United States Constitution limits federal courts' jurisdiction to cases and controversies, which requires inter alia that plaintiffs have standing to bring the asserted claim against the putative defendant.  See Miller v. Brown, 462 F.3d 312, 316 (4th Cir. 2006).  As the Supreme Court has explained, "the irreducible constitutional minimum of standing contains three elements."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 560

7

(1992).  To have standing, a plaintiff must show 1) an "injury in fact," meaning "an invasion of a legally protected interest" that is "concrete and particularized"  and "actual or imminent";  2) a " causal connection between the injury and the conduct complained of,"  meaning that the injury is "fairly traceable"  to the defendant's actions; and 3) a likelihood that the injury "will be redressed by a favorable decision."  Id. at 560–61.  "The party invoking federal jurisdiction bears the burden of establishing these elements."  Id. at 561.

Plaintiff IOC has not shown that it possesses any "legally protected interest" relevant to this case.  Id.  The complaint alleges and plaintiff Jones has testified that plaintiff IOC voluntarily advanced $134,258.06 to Jones so that he could pay the balance of his loan on the damaged equipment and thereby qualify for a loan to acquire new equipment.  See (DE 41 at 23); (DE 24-12 ¶ 21).[2]  This voluntary payment does not, however, confer standing on plaintiff IOC.  It is not a party to the relevant insurance contract, which is between defendant and plaintiff Jones and assigns rights and responsibilities only to them.  (See DE 39-3 at 3).  Plaintiff IOC has not asserted any other legal rights that defendant allegedly has violated.  In addition, the loan to plaintiff Jones occurred after defendant denied the claim, and does not appear to have altered any rights under the relevant contract.  Plaintiff IOC therefore has not shown the requisite injury in fact.

Plaintiff IOC also has not shown that its injury is redressable by a favorable decision from this court.  The complaint seeks relief in the form of "an order reforming [plaintiff] Jones'[s] policy . . . , judgment against [defendant] for all amounts due under the policy as reformed and for all consequential damages . . . , [and] treble damages pursuant to N.C. Gen. Stat. . . . § 75-16." (compl. at 10).  None of these remedies would affect plaintiff IOC.  An order requiring payment under the

---

[2]     The court construes plaintiffs' citation to "(ECF 1-1) at ¶¶ 25-26" (DE 41 at 23) as an attempt to cite to the complaint in this matter, which may be found at DE 1-3, where DE 1-1 is an index of exhibits without numbered paragraphs.

insurance contract would require defendant to pay only Jones, the named insured. (See DE 39-2 at 11, 13). No part of the contract provides for payments to an agent of the insured. (See generally id.). Only plaintiff Jones has alleged that he suffered consequential damages, specifically that he "had to incur extra expense in hiring others to harvest his crops," (compl. ¶ 23), and that he "incurred interest expense on the acquisition of a new combine and header." (Id. ¶ 26). Finally, N.C. Gen. Stat. § 75-16 provides treble damages only the "person, firm, or corporation" injured by the unfair trade practice alleged. N.C.G.S. § 75-16. As the court has explained, IOC is not such an entity.

Plaintiff IOC asserts that it joined this action "to aviod any 'real party in interest' issues arising from [its] interest in a portion of any recovery due to its advance of funds to Mr. Jones pending resolution of his claim." (DE 41 at 23). Plaintiff IOC does not cite any cases illuminating this argument, however, the court notes that this action originally was filed in state court and makes reference to Rule 17(a) of the North Carolina Rules of Civil Procedure, which requires that "[e]very claim . . . be prosecuted in the name of the real party in interest." N.C.G.S. § 1A-1, Rule 17(a). "A a real party in interest is a party who is benefited or injured by the judgment in the case." Parnell v. Nationwide Mutual Insurance Co., 263 N.C. 445, 448 (1965). "An agent is not a real party in interest." Id. As the court explains above, plaintiff IOC will not be affected directly by this court's judgment. In addition, plaintiff IOC has not cited, and the court has not found, any cases in which a voluntary loan sufficed to make a creditor a real party in interest.

Accordingly, plaintiff IOC lacks standing to pursue claims under the contract at issue, and defendant's motion for summary judgment in this part is granted.

b.    Breach of Contract

Where it is undisputed that plaintiff Jones has standing, the court next turns to his argument

he is entitled to summary judgment in his favor on the basis of breach of contract.[3]   The court

agrees with plaintiff Jones, in part, that defendant is required to honor the coverage for which

plaintiff Jones paid, (see DE 18), however, a dispute of material fact exists as to how much plaintiff

Jones is owed.

i.    Breach

In order to prevail on a claim for breach of contract, plaintiff must show "1) the existence

of a valid contract and 2) breach of the terms of the contract."   Wells Fargo Insurance Services

USA, Inc. v. Link, 372 N.C. 260, 276 (2019).  To create an enforceable contract, "the contracting

parties must have agreed on all material terms of the contract."  Boyce v. McMahan, 285 N.C. 730,

733 (1974).  Any term that is "part of the consideration" of a contract is material.  Chappel v. Roth,

353 N.C. 690, 693 (2001); see also Campbell v. Adkisson, Sherbert & Associates, 546 Fed. Appx.

146, 151 (4th Cir. 2013) (indicating that a party's willingness to accept additional provisions

"without further consideration" disqualifies such provisions as material terms); Myrick v. Prime

Insurance Syndicate, Inc., 395 F.3d 485, 492 (4th Cir. 2005) (requiring in an analogous case

determined under South Carolina law that the "record conclusively establish[] that the

_____

[3]      Plaintiffs' brief, containing the headings "North Carolina Law Requires that the Policy Be Reformed to
Reflect the Parties' Intent," and "Crum's Behavior After Discovery of the Mistake Violated the Unfair and
Deceptive Trade Practices Statute," is not a model of clarity on this issue.  (DE 49 at 5, 7).  The complaint nominally
lists claims for "reformation," "damages," and "unfair trade practice," asserting under the heading "damages" that
plaintiff Jones "satisfied all obligations under the policy [and defendant] breached the contract with [plaintiff] Jones
by failing to reform the policy and pay the Jones claim."  (Compl. ¶ 33) (emphasis added).  Where plaintiffs'
memorandum in support of their motion for summary judgment raises arguments bearing on the breach of contract
claim, the court deems this issue properly raised.  See (DE 49 at 1) (arguing that the misdescription was "non-
material" and that defendant "would have insured the Jones equipment for the same or a lower premium if the
misdescription had not occurred.").

misdescription materially affected the risk assumed by the insurer" for the insurer to be entitled to judgment as a matter of law).

The policy in effect on the date of the loss provides that defendant will "pay for direct physical loss of or damage to covered property from any of the covered causes of loss." (DE 39-2 at 15). "Covered property" is defined as "property described in the declarations." (Id.). The declarations page accurately lists plaintiff Jones's "combine" and its year of manufacture, but incorrectly represents the serial number, brand, and valuation. (Id. at 11). The declarations page likewise accurately listed Jones's "header" but incorrectly represents its year of manufacture, serial number, brand, and valuation. (Id.). None of these misdescriptions, however, constitute material terms of the contract.

It is undisputed that defendant would not have demanded further consideration had IOC accurately reported the brand name, serial number, and lower valuation of the equipment plaintiff Jones actually possessed. Indeed, in response to plaintiffs' interrogatories, defendant states "that it would likely have been willing to insure the New Holland Equipment . . . instead of the AgCo equipment if they had been listed on the policy application with item values approximately the same as the AgCo equipment." (DE 39-17 at 5). In addition, defendant states that "it would likely have charged a higher premium for insuring the New Holland Equipment instead of the AgCo equipment . . . if the item values listed for them exceeded the item values listed for the AgCo equipment." (Id.) (emphasis added). The value of plaintiff Jones's equipment, however, assertedly was lower than that listed on the policy. (See DE 64-2 at 3). There is no evidence suggesting that the brand name or serial number of a piece of equipment influenced defendant's decisions regarding whether to issue a policy or what premium to charge. Furthermore, while defendant couches its interrogatory response in terms of what it "likely" would have done, it

11

provides no examples or explanations of circumstances in which it might have charged a higher premium for the equipment with the same or lower monetary value based on manufacturer, year, or serial number. Instead, an email from RTS reflects that the policy was issued to "match the limits and exposures on [Jones's] application," rather than relying directly on manufacturer or other information. (DE 39-13 at 4).

The court thus concludes that plaintiff Jones has proven the existence of a contract to insure his combine and header in an amount up to $210,000.00, and any contrary result "would necessarily be based on speculation and conjecture." Myrick, 395 F.3d at 489. It is undisputed that defendant refused to pay for the loss. Accordingly, plaintiff Jones is entitled to judgment as a matter of law on his breach of contract claim, and that part of plaintiffs' motion for summary judgment is granted.

In addition and in the alternative, the court relies on N.C.G.S. § 58-3-10, which provides that "descriptions in any application for a policy of insurance or in the policy itself, shall be deemed representations . . . , and a representation, unless material or fraudulent, will not prevent a recovery on the policy." N.C. Gen. Stat. § 58-3-10; see also Old Colony v. Garvey, 253 F.2d 299, 301 (4th Cir. 1958) (requiring a showing that the representation was such "as would naturally and reasonably have influenced the insurance company with respect to the contract or risk" in order for the insurer to avoid liability). As the court has explained, the brand name and serial number by definition were not material to the instant contract, and it is undisputed that plaintiffs made no fraudulent representations. Where North Carolina has by statute mandated that non-material and non-fraudulent misrepresentations do not prevent recovery on an insurance contract, a non-material mistake does not absolve defendant of its contractual responsibilities.

12

Defendant argues that whether it "would have insured the New Holland Equipment at the same or lower premium" is irrelevant to the inquiry where prejudice is not a factor considered by North Carolina courts in contract reformation cases. (DE 57). As the court explains below, defendant is correct as to reformation. The question of whether a higher premium would have been charged, however, affects whether a provision is an enforceable material term. See Chappel v. Roth, 353 N.C. at 693. Where there is no evidence suggesting manufacturer or serial number affected the consideration required, neither terms are material to the contract at issue. Defendant's argument that plaintiff IOC should bear the loss due to its negligence is similarly unavailing. "In general, the plaintiff is the master of the complaint and has the option of naming only those parties the plaintiff choses to sue." Lincoln Property Co. v. Roche, 546 U.S. 81, 91 (2005). That plaintiff IOC may have had "the duty to submit the right property for coverage" simply is not relevant to defendant's liability for breach of contract. (DE 57 at 9).

Accordingly, that part of plaintiffs' motion for summary judgment on the breach of contract claim is granted, and defendant's motion for summary judgment on this portion of plaintiffs' claim is denied.

ii.     Damages

There exists a dispute of material fact as to the extent of defendant's liability. Under North Carolina law, a successful plaintiff in a breach of contract action may obtain compensation for "injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made." Troitino v. Goodman, 225 N.C. 406, 412 (1945).

Plaintiff Jones claims entitlement to "the $173,750.00 value of the . . . equipment at the time of the fire, plus . . . consequential damages of $56,498.00" that resulted from the hiring of "a third party to harvest his crops." (DE 41 at 26). Plaintiffs have produced an invoice payable to

13

A1 Custom Harvesting in the amount of $56,498.00, see (DE 45-5 at 2), however, defendant takes issue with the lack of "proof that this invoice was paid, that the invoice charges a reasonable amount for third-party harvesting services, or that plaintiffs made a reasonable effort to mitigate . . . damages before hiring a third-party harvester." (DE 57 at 12). In addition, defendant maintains that it has refunded $1688.51 in premiums to plaintiff Jones, see (DE 39-16), however, the record evinces a check in the amount of $1,528.31, see (DE 44-11 at 2), where certain deductions or fees were imposed. See (DE 53-14 at 4).

Accordingly, the court finds that a genuine issue of material fact remains as to the damage award appropriate in this case, and defers judgment in favor of plaintiff Jones pending further briefing on this issue. Therefore, that part of the parties' motions for summary judgment on the issue of damages for breach of contract are denied.

    c.  Reformation

Under North Carolina law, the party asking for reformation must "prove first, that a material stipulation was agreed upon by the parties . . . and second, that such stipulation was omitted from the deed or instrument as written by mistake, either of both parties, or of one party, induced by the fraud of the other, or by the mistake of the draftsman." Matthews v. Shamrock Van Lines, Inc., 264 N.C. 722, 725 (1965). Reformation is proper only when the written instrument "does not express the true intent of both parties." Id.; see also Durham v. Creech, 32 N.C. App. 55, 59 (1977) ("When, due to the mutual mistake of the parties, or perhaps a mistake by their draftsman, the agreement expressed in a written instrument differs from the agreement actually made by the parties, the equitable remedy of reformation is available."). The party seeking reformation must show mutual mistake by "clear cogent, and convincing evidence." Hice v. Hi-Mil, Inc., 301 N.C. 647, 651 (1981); see also Branch Banking and Trust Co. v. Chicago Title Ins.

Co., 214 N.C. App. 459, 465 (2011) (holding that an asserted "general intent on the part of [insurer] to cover whatever real property [the insured] intended to have covered is insufficient to form the basis for a reformation based upon mutual mistake"). There is "a strong presumption in favor of the correctness of the instrument as written and executed, for it must be assumed that the parties knew what they agreed and [chose] fit and proper words to express" the entire agreement. Id.

Successful plaintiffs in reformation cases before the North Carolina Supreme Court and Court of Appeals all have included some evidence of the defendant's or relevant contracting party's intent at the time the contract was made or shortly thereafter. See, e.g., Hice, 301 N.C. at 652 (in which the buyer "testified that the sale . . . did not include any part[] of plantiff's homeplace"); U.S. Bank, N.A., v. Cuthbertson, No. COA09-1605, 2010 WL 2651630, at *1 (N.C. Ct. App. Jul. 6, 2010) (in which defendant's trustee "agreed that a reformation of" the relevant deed "was proper" and defendants "acknowledged that the deed of trust contained the alleged mistake"); Taylor v. Miller, No. COA07-913, 2008 WL 4911256, at *2 (N.C. Ct. App. Nov. 18, 2008) (finding that "defendant . . . acquiesced in [plaintiff's] occupation, possession, and use" of a disputed lot); Shelby Ins. Co. v. Goodwin, No. COA05-1043, 2006 WL 997748, at *3 (N.C. Ct. App. Apr. 18, 2006) (finding reformation proper where uncontroverted findings of fact stated that it was the insurer's intent to insure the customer's construction business). Reformation is not proper, by contrast, when there the evidence illuminating the opposing party's understanding of the stipulations agreed to is thin or nonexistent. See, e.g., Branch Banking and Trust Co., 214 N.C. App. at 518-19 (holding that the party claiming reformation had failed to present required evidence that it and the opposing party had "orally agreed upon the specific description of the . . . property to be covered by the [insurance] policy"); Barrett v. Coston, 261 N.C. App. 311, 316 (2018) (holding "parol evidence suggesting that the [d]ecedent, at some point late in his life, had expressed

15

an intention that [p]laintiff would receive the house at his death" insufficient to reform a deed conveying a second property to defendant so as to include a stipulation conveying decedent's house to plaintiff); Light v. Equitable Life Assurance Society of the United States, 56 N.C. App. 26, 32 (1982) (holding that plaintiff was not entitled to reformation of a life insurance contract where "the nature of the act of changing the beneficiary is such as to preclude the insurance company's having any intention with regard thereto").

Plaintiffs rely heavily upon Metropolitan Property and Casualty Insurance Co. v. Dillard, in which the North Carolina Court of Appeals held an insured entitled to reformation of an insurance policy that mistakenly listed "4321 Sudbury Road" instead of the correct address, "4200 Sudbury Road." 126 N.C. App. 795, 798-99 (1997). This case is instructively distinguishable where most of the information included in the application was accurate and where the insured presented evidence of the insurer's intent.[4] The instant case is not one in which an error altered improperly one number in an otherwise accurate description; the brand name and serial numbers of both pieces of equipment were incorrect, (see DE 39-2 at 11), and the header was incorrectly described as a 2013 rather than a 2008 model. (Id.). While the declaration does describe properly the type of equipment to be insured and the model year of the combine, this is not a case of a minor descriptive flaw supporting reformation. Accordingly, that part of plaintiffs' motion for summary judgment seeking reformation of the contract at issue is denied, and defendant's motion for summary judgment on this portion of plaintiffs' claim is granted.

---

[4]     The insured in Metropolitan correctly described on his application "the residence['s] having been built in 1967, being 1600 square feet in size, brick veneer, with a fourteen-foot deck" and with "United Carolina Bank of Whiteville, North Carolina" as mortgagee. Id. at 797. The record included in addition "a statement by the insurance agent that she believed defendant intended to insure property which belonged to him." Id. Only the street number was incorrect. Id.

16

      d.     UDTPA

Plaintiff Jones asserts that he is entitled to triple damages under the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"). The court disagrees.

"A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68 (2000). North Carolina declares as unlawful "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: 1) defendant committed an unfair or deceptive act or practice, 2) the action in question was in or affecting commerce, and 3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 353 N.C. 647, 656 (2001).

Insurance law in North Carolina is governed by North Carolina General Statute § 58-63-15(11), which enumerates certain unfair claim settlement practices. Gray, 352 N.C. at 68. "[T]he acts proscribed in [N.C. Gen. Stat.] § 58–63–15(11) were designed to protect the consuming public" based on the determination that the specified conduct is "inherently unfair, unscrupulous, immoral, and injurious to consumers." Id. at 70-71. In considering the intersection between North Carolina General Statute § 75-1.1 and § 58-63-15(11), the Fourth Circuit has explained as follows:

> North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, prohibits unfair and deceptive acts or practices, generally, and North Carolina's "Unfair Claim Settlement Practices" statute, N.C. Gen. Stat. § 58-63-15(11), defines unfair practices in the settlement of insurance claims. As relevant here, § 75-1.1 provides a private cause of action for violations, whereas § 58-63-15(11) does not; instead "the remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim." Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 563 S.E.2d 269, 278 (2002). Thus, an individual may file an independent § 75-1.1 claim, or may file a § 75-1.1 claim that relies on a violation of § 58-63-15(11). See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 529 S.E.2d 676, 684 (2000).

17

Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018). Unlike with allegations of common law bad faith, good faith is not a defense to an alleged violation of N.C.G.S. § 58-63-15(11). See Gray, 352 N.C. at 68 ("Good faith is not a defense to an alleged violation of [N.C. Gen. Stat.] § 75–1.1.").

Plaintiffs contend defendant violated N.C. Gen. Stat. §§ 58-63-15(11)(d), (f), and (g). The court addresses each subparagraph in turn.

i.       § 58-63-15(11)(d)

North Carolina makes it unlawful for insurers to "[r]efus[e] to pay claims without conducting a reasonable investigation based upon all available information." N.C. Gen. Stat. § 58-63-15(d). While plaintiffs assert this violation in the complaint, they neither references this section in the memorandum in support of their motion for summary judgment, (see DE 41 at 23-26), nor explain how defendant may have failed to conduct a reasonable investigation. Accordingly, that part of plaintiffs' motion for summary judgment seeking recovery on the UDTPA claim under this provision is denied, and defendant's motion for summary judgment on this portion of plaintiffs' claim is granted.

ii.       § 58-63-15(11)(f)

Subparagraph (f) states that it is an unfair claim settlement practice to "[n]ot attempt[] in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." N.C. Gen. Stat. 58-63-15(11)(f). "[A] bad faith refusal to settle a claim cannot rest merely 'on honest disagreement or innocent mistake.'" ABT Building Products Corp. v. National Union Fire Ins. Co. of Pittsburg, 472 F.3d 99, 125 n.32. Accordingly, where an insurer "ha[s] reasonable bases to challenge the validity of [the insured's] claims," subparagraph (f) is not applicable. Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225,

18

234 (4th Cir. 2001); cf. also id. at 233 ("[A] reasonable, non-negligent misunderstanding regarding a policy term is insufficient to ground an UDTPA claim."); Jones v. Harrelson & Smith Contractors, LLC, 194 N.C. App. 203, 230 (2008) (Tyson, J., concurring) ("North Carolina courts are extremely hesitant to allow plaintiffs to attempt to manufacture a tort action and allege [an UDTPA claim] out of facts that are properly alleged as a breach of contract claim."), aff'd, 363 N.C. 371 (2009) (per curiam); Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 42 (2006) ("A mere breach of contract, even if intentional, is not an unfair or deceptive act under [UDTPA].").

Here, liability in favor of plaintiff Jones was insufficiently clear. Plaintiff IOC's "position [was] that there should [have been] reformation of the policy," (DE 39-13 at 3); see also (DE 64-1 at 13) (letter from counsel for plaintiff IOC to counsel for defendant analyzing only the law of reformation). However, for the reasons set forth in the court's analysis of plaintiffs' reformation claim, previously, plaintiffs are not entitled to reformation of the policy under North Carolina law. Defendant's honest disagreement on this ground therefore cannot support liability under the UDTPA.

In sum, where plaintiffs advanced primarily an incorrect theory of liability, and defendant had a reasonable basis to challenge their claims, it is not liable under N.C. Gen. Stat. § 58-63-15(11)(f). Accordingly, that part of plaintiffs' motion for summary judgment seeking recovery on the UDTPA claim under this provision is denied, and defendant's motion for summary judgment on this portion of plaintiffs' claim is granted.

### iii. § 58-63-15(11)(g)

Section 58-63-15(11)(g) prohibits "[c]ompelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts

19

ultimately recovered in actions brought by such insured." N.C. Gen. Stat. § 58-63-15(11)(g). The United States Court of Appeals for the Fourth Circuit has determined that claims under this subsection are premature when brought before "liability [has] been determined." Elliott v. American States Insurance Company, 883 F.3d 384, 398 (4th Cir. 2018); see also DENC, LLC v. Philadelphia Indem. Ins. Co., 426 F. Supp. 3d 151, 158 (M.D.N.C. 2019) (holding that it is not "reasonable to interpret the subsection as imposing strict liability on an insurer who refuses to pay a claim later found to be valid").

Here, plaintiffs have not shown that defendant compelled them to institute litigation to recover amounts due under the policy by offering substantially less than the amount ultimately recovered because no amount is yet "due" where liability has not been determined. Accordingly, plaintiffs cannot recover under this or any subsection of the UDTPA. Therefore, plaintiffs' motion for summary judgment on this portion of the claim is denied, and defendant's motion for summary judgment on this portion of the claim is granted.

C.    Defendant's Motion to Exclude

1.    Standard of Review

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony. Under Rule 702, expert testimony is appropriate when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. A witness qualified as an expert may be permitted to testify where "(b) the testimony is based upon sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the expert has reliably applied the principles and methods to the facts of the case." Id.

The rule imposes a "basic gatekeeping obligation" upon a trial judge to "ensure that any and all scientific testimony is not only relevant, but reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993). "The proponent of the testimony must establish its admissibility by a preponderance of proof." Cooper v. Smith & Nephew, Inc., 259 F.3d 194, 199 (4th Cir. 2001).

"[R]elevance – or what has been called 'fit' – is a precondition for the admissibility of expert testimony, in that the rules of evidence require expert opinions to assist the 'the trier of fact to understand the evidence or to determine a fact in issue.'" United States v. Ancient Coin Collectors Guild, 899 F.3d 295, 318 (4th Cir. 2018). A key "aspect of relevancy . . . is whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Daubert, 509 U.S. at 591 (internal quotations omitted).

The reliability inquiry is a "flexible one focusing on the principles and methodology employed by the expert, not on the conclusions reached." Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999). One factor pertinent to reliability is the proposed expert's qualifications. See Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791, 799 (4th Cir. 1989). A witness may qualify to render expert opinions in any one of the five ways listed in Rule 702: knowledge, skill, experience, training, or education. Kumho Tire, 526 U.S. at 147. When an expert's qualifications are challenged, "'the test for exclusion is a strict one, and the purported expert must have neither satisfactory knowledge, skill, experience, training nor education on the issue for which the opinion is proffered.'" Kopf v. Skyrm, 993 F.2d 374, 377 (4th Cir. 1993).

In assessing whether expert testimony is "reliable," the court considers additional factors besides the expert's qualifications. These include:

> (1) whether a theory or technique can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential

rate of error; (4) the existence and maintenance of standards controlling the techniques' operation; and (5) whether the technique has received general acceptance within the relevant scientific or expert community.

United States v. Crisp, 324 F.3d 261, 266 (4th Cir. 2003). These factors are "neither definitive, nor exhaustive," and "particular factors may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Cooper, 259 F.3d at 199–200. "[T]he court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful[,] . . . depend[ing] upon the unique circumstances of the expert testimony involved." Westberry, 178 F.3d at 261.

Of course, the admission of expert testimony must be considered within the context of the other rules of evidence. In particular, Rule 403 provides that the court must ensure that the probative value of any proffered evidence is not "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. As this court has noted, "[d]espite the court's ability to exercise broad discretion and flexibility when determining the admissibility of expert testimony, the court must balance this discretion with the concerns of Rule 403 to ensure that the probative value of the proffered testimony is not 'substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Bouygues Telecom, S.A. v. Tekelec, 472 F. Supp. 2d 722, 725 (E.D.N.C. 2007) (quoting Fed. R. Evid. 403).

    2.    Analysis

Defendant seeks exclusion of Tilden's opinions due to lack of relevance. Tilden is an "author, agent, broker, consultan, underwriter, drafter of policy forms and endorsements, teacher, historian, claim examiner, and consultant for both the insured and insurers" with "over 48 years of experience in the insurance and risk management industry." (Tilden Report (DE 53-13) at 6). In

the instant action, Tilden intends to testify as to "the procurement, servicing and adjustment of an insurance policy." (Id.).

The expert opinions of Tilden are not relevant because they would not assist the trier of fact in determining the material issues remaining, namely, the amount of damages attendant to defendant's breach of contract. The report references general asserted precepts of the insurance industry without illuminating the negotiations of the parties in this specific instance or explaining these precepts' relevance to the appropriate level of damages. See, e.g., (id. at 10) ("Insurance companies are interested in preserving their right to select insureds with whom they are willing to enter into contractual arrangements and reject others"); (id. at 11) ("Perhaps the most fundamental of insurance principles is the principle of indemnity . . . [which] underscores tone of the most basic tenets of insurance – that the role of insurance is to put insureds back into the same financial position they enjoyed before the occurrence of an insured event, but insurance is not intended to enrich them unjustly."). That portion of Tilden's report specifically addressing damages merely replicates materials already before the court. See, e.g., (id. at 13-14) (asserting that defendant "has not returned the premium to [plaintiff] Jones"); (id. at 14) (asserting that defendant "has chosen to deny coverage for an actual cash value loss of $173,750[.00]") (citing to (DE 64-2) ¶ 8).

Accordingly, defendant's motion is granted, and Tilden's testimony is excluded under Rule 702.

## CONCLUSION

Based on the foregoing, plaintiffs' motion for summary judgment (DE 48) is GRANTED IN PART and DENIED IN PART as set forth herein. Defendant's motion for summary judgment (DE 37) is GRANTED IN PART and DENIED IN PART as set forth herein. Defendant's motion to exclude the testimony of R. Bryan Tilden (DE 52) is GRANTED. The clerk is directed to

terminate plaintiff Lawver Insurance & Financial Services, d/b/a Insurance of the Carolinas, as a party in this case.

Within 30 days of entry of this order, the remaining parties are directed to file a joint report proposing a briefing schedule on the issue of damages.

SO ORDERED, this the 25th day of September, 2023.

LOUISE W. FLANAGAN
United States District Judge